# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STERLING B. WILLIAMS, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Case No. 02-CV-0377-JHP-FHM |
| | ) | |
| RANDALL WORKMAN, Warden, | ) | |
| OKLAHOMA STATE PENITENTIARY, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus (Dkt. #25) filed by Oklahoma death row inmate Sterling B. Williams, pursuant to 28 U.S.C. § 2254. Petitioner, who appears through counsel, challenges his conviction and sentencing in Tulsa County District Court Case No. CF-97-2385. Respondent filed a response to the Petition denying its allegations (Dkt. #31), Petitioner filed an Amendment to his Petition for Writ of Habeas Corpus (Dkt. #37), Respondent filed a Response to Petitioner's Amendment to his Petition for Writ of Habeas Corpus (Dkt. #41) and Petitioner filed a Reply (Dkt. #48). For the reasons discussed below, the Court finds the Petition should be denied.

The Court has reviewed: (1) the Petition for Writ of Habeas Corpus, the Response to the Petition, the Amendment to the Petition, the Response to the Amendment and the Reply; (2) transcripts of the motion hearings held on August 18 and October 6, 1997, December 28, 1998, and April 15, 1999; (3) transcript of jury trial proceedings (including voir dire, and first and second stage proceedings), held April 19-23, 26-28, 1999 (eight volumes) (hereinafter referred to as "Tr. _____"); (4) all documents and exhibits (photographs of certain items of physical evidence submitted in lieu of actual items) admitted in jury trial proceedings; (5) transcript of the

sentencing proceedings held on May 10, 1999; (6) Original Record (O.R.) in Tulsa County Case No. CF-97-2385; and (7) all other records before the Oklahoma Court of Criminal Appeals which were transmitted to this Court and certified by the parties.

## BACKGROUND

**I.    FACTUAL HISTORY**

Petitioner was convicted of the first-degree murder of LeAnna Hand and of the assault and battery with intent to kill on her roommate Elizabeth Hill. Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts as found by the state court are presumed correct. In Petitioner's state court direct appeal, the Oklahoma Court of Criminal Appeals adopted the following facts:

> In May of 1997, [Williams] worked as an independent contractor for Willard Enterprises Colorado Choice Meat Company. He had sold Hand meat on prior occasions. On May 14, 1997, [Williams] phoned Hand and said he had some free meat he was going to give away and that he would bring it by her home. At approximately 11:00 a.m., Hill was in her room dressing when she heard a knock at the front door. A moment later, she heard the answering machine on the telephone click on. Hill picked up the phone in her bedroom and discovered Hand's mother on the line. Hill spoke for just a moment, then she heard Hand call her name from the other room. She opened her bedroom door and saw Hand struggling with [Williams]. Hill heard Hand fall to the floor and saw [Williams] standing over her body. Hill immediately shut her bedroom door and locked it. She tried to call 9-1-1 but could not get an open phone line. [Williams] then kicked down her bedroom door and knocked the phone out of her hand. He told Hill to be quiet. Instead, she screamed and tried to run out of the room. She escaped from her room, but [Williams] tackled her in the hallway. He threw her to the ground, climbed on top of her, and put both hands around her neck. Despite [Williams]'s attempts to choke Hill, she fought back and was able to free herself and run out of the front door of the duplex.
>
> Hill was running to a neighbor's home when the manager of a nearby apartment complex, Carol Gorman, saw her and waved her over. Gorman observed bloody hand prints on Hill's neck. Meanwhile, as soon as Hill ran out of the duplex, [Williams] also left. He walked to his car parked in the driveway of the duplex and drove away.

The police arrived at the scene to find Hand dead in her living room. She had suffered a seven inch stab wound to her chest. The knife cut through her ribs, through a portion of her left lung, completely through her heart and into her right lung. The knife was still in her body, tangled in her clothes. Near the victim the police found a box from the Colorado Choice Meat Company, a roll of duct tape, a baseball cap with the company logo, and a pair of gloves. Nothing was missing from the duplex, including cash Hill had left on her bed.

On the same day, [Williams] phoned his employer and said he had just killed a girl and had to go to Chicago to hide out. [Williams] withdrew money from his back [sic] account. [Williams] also phoned his girlfriend, Consuela Drew, and told her he was going to jail. An all points bulletin was issued containing a description of [Williams]'s car. The next day, May 15, 1997, Ms. Drew again spoke with [Williams] and told him to turn himself in to the police. That same day [Williams] was stopped by authorities in Alexandria, Louisiana. He had a serious cut to the index finger on his left hand, and scratches on his neck, face and chest. [Williams] cooperated with the officers and asked that the $121 dollars taken from him be given to his children.

A t-shirt retrieved from [Williams] later tested positive for Hand's DNA. The knife found at the murder scene was found to match a butcher block set of knives in [Williams]'s home.

At trial, the defense offered no evidence during the guilt stage. During the second stage of trial, the State presented evidence to support four aggravating circumstances. This evidence consisted of two Judgment and Commitment Orders from the State of Arkansas indicating [Williams]'s prior convictions for rape, kidnapping, burglary, and first degree battery. The State's evidence also showed that on separate occasions, [Williams] had attacked girlfriend, Yolanda Cunningham; broken into the home of Mike Applebury and attacked him with a baseball bat; and made obscene threatening phone calls to Michelle Sauser.

During the second stage, the defense argued [Williams] suffered from several mental health difficulties, including bipolar disorder and a sexual disorder. Expert witness testimony was offered to show that [Williams]'s family had a history of severe substance abuse and poor anger control. Evidence also showed [Williams] suffered from childhood physical abuse at the hands of his father. Expert witness testimony showed [Williams] went to Hand's home intending only to rape her, not kill her, and that his mental disorders caused him to panic when Hand resisted and he stabbed her only intending to silence her.

Williams v. State, 22 P.3d 702, 708-09 (Okla. Crim. App. 2001).

## II.    PROCEDURAL HISTORY

Petitioner, Sterling Bernard Williams, was tried by jury and convicted of First Degree Murder (Count I) and Assault and Battery with Intent to Kill, After Former Conviction of Two Felonies (Count II), in Case No. CF-97-2385, in the District Court of Tulsa County. At the conclusion of the sentencing stage, in Count I, the jury found the existence of four (4) aggravating circumstances and recommended the punishment of death. In Count II, the jury recommended as punishment ninety-nine (99) years imprisonment. On May 10, 1999, the trial court sentenced Petitioner to death on the murder conviction and to ninety-nine (99) years imprisonment on the assault and battery conviction.

Petitioner filed a direct appeal of his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA") in Case No. D-99-654. The OCCA rejected Petitioner's alleged errors by affirming the convictions and sentences on both counts. Williams, 22 P.3d at 733. The OCCA denied rehearing on May 17, 2001.

Petitioner sought post-conviction relief from the OCCA in Case No. PCD-2000-1650, but all requested relief was denied on September 4, 2001, in a published opinion. Williams v. State, 31 P.3d 1046 (Okla. Crim. App. 2001) ("Williams (PC)"). On January 7, 2002, the United States Supreme Court rejected Petitioner's petition for writ of certiorari. Williams v. Oklahoma, 534 U.S. 1092 (2002).

Petitioner filed a second application for post-conviction relief from the OCCA in Case No. PCD-2002-1067, but all requested relief was denied on January 10, 2003 in an unpublished opinion.

Petitioner initiated the instant habeas corpus proceedings on May 13, 2002. He claims constitutional violations arising from the trial court's refusal to instruct on second-degree murder and/or first-degree manslaughter, error in the trial court's dismissal of a potential juror for cause, errors in the second stage jury instructions, ineffective assistance of trial counsel, the trial court's evidentiary, instructional and procedural errors, use of prior felony convictions to support more than one aggravator, insufficient evidence to support the "great risk of death to more than one person" aggravator, prosecutorial misconduct, improper victim impact evidence, unconstitutional application of continuing threat aggravator, ineffective assistance of appellate counsel, improper instruction on continuing threat aggravator, systematic risk of error in Oklahoma, cumulative errors, and improper weighing of aggravating and mitigating circumstances by the appellate court.

## GENERAL CONSIDERATIONS

### I.  EXHAUSTION

Federal habeas corpus relief is generally not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b). Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994). See also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement). In every habeas case, the court must first consider exhaustion. Harris, 15 F.3d at 1554. "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). The Supreme Court has long held that a federal habeas petitioner's claims should be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims. Id.  (citing Ex parte Royall,

117 U.S. 241 (1886)); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); <u>Castille v. Peoples</u>, 489 U.S. 346 (1989); and 28 U.S.C. § 2254(b) (codifying the rule).

The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts. Therefore, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). State courts must have the rightful opportunity to adjudicate federal rights. The "[p]rinciples of exhaustion are premised upon recognition by Congress and the Court that state judiciaries have the duty and competence to vindicate rights secured by the Constitution in state criminal proceedings." <u>Williams v. Taylor</u>, 529 U.S. 420, 436-37 (2000). This Court will address the exhaustion issue as it arises in each claim.

## II.  PROCEDURAL BAR

The Supreme Court has also considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules. <u>See, e.g.</u>, <u>Francis v. Henderson</u>, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.   <u>Coleman</u>, 501 U.S. at 750. <u>See also</u> <u>Romero v. Tansy</u>, 46 F.3d 1024, 1028 (10th Cir. 1995); <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1353 (10th Cir. 1994).

A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985); <u>Duvall v. Reynolds</u>, 139 F.3d 768, 796-97 (10th Cir. 1998).   If the state court finding is applied "evenhandedly to all

similar claims," it will be considered "adequate." <u>Maes v. Thomas</u>, 46 F.3d 979, 986 (10th Cir. 1995) (<u>citing</u> <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982)).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. <u>Coleman</u>, 501 U.S. at 749-50.

## III.    STANDARD OF REVIEW - AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") specifically delineates the circumstances under which a federal court may grant habeas relief. Title 28, Section 2254 (d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d), this Court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of Petitioner's case. <u>Terry Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

**PETITIONER'S CLAIMS FOR RELIEF**

**I.     Jury Instructions on Lesser-Included Offenses**

Petitioner alleges in his first claim for relief that the trial court committed constitutional error in denying Petitioner's requested jury instructions on both murder in the second-degree by one with a "depraved mind" and first-degree manslaughter  pursuant to Beck v. Alabama, 447 U.S. 625 (1980). Petitioner contends that a second-degree murder instruction was warranted as there was evidence supporting a lack of intent to kill. In response, Respondent declares that the OCCA's rejection of this claim on direct appeal was not contrary to, nor an unreasonable application of, Beck.

The Due Process Clause of the Fourteenth Amendment ensures that the death penalty may not "be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." Beck, 447 U.S. at 627. The Supreme Court explained that "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense – the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction" and that "[s]uch a risk cannot be tolerated in a case in which the defendant's life is at stake." Gilson v. Sirmons, 520 F.3d 1196, 1233 (10th Cir. 2008) (quoting Beck, 447 U.S. at 637). The Beck requirement is satisfied so long as the jury had the option of at least one lesser-included offense. Schad v. Arizona, 501 U.S. 624, 645-46 (1991).  The Supreme Court has reiterated that the goal

in <u>Beck</u> was to "eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence." <u>Id.</u> at 646-47 (<u>quoting</u> <u>Spaziano v. Florida</u>, 468 U.S. 447, 455 (1984)).

The Tenth Circuit Court of Appeals in <u>Hogan v. Gibson</u> cautioned:

> <u>Beck</u>, 447 U.S. at 627 . . . requires a court to consider whether there is sufficient evidence to warrant instructing the jury on a lesser included offense, not whether there is sufficient evidence to warrant conviction on the greater offense. A <u>Beck</u> claim is not the functional equivalent of a challenge to the sufficiency of the evidence for conviction; rather, <u>Beck</u> focuses on the constitutionality of the procedures employed in the conviction of a defendant in a capital trial and is specifically concerned with the enhanced risk of an unwarranted capital conviction where the defendant's life is at stake and a reasonable jury could have convicted on a lesser included offense. <u>See</u> <u>id.</u> at 637 . . . . Given these concerns, the sufficiency of the evidence of the greater offense is distinct from the <u>Beck</u> inquiry into whether the evidence might allow a jury to acquit a defendant of the greater of the offenses and convict him or her of the lesser.

197 F.3d 1297, 1305 (10th Cir. 1999).

Petitioner's <u>Beck</u> claim has two components. First, Petitioner must establish that the crime on which the trial court refused to instruct was actually a lesser-included offense of the capital crime of which he was convicted. <u>Phillips v. Workman</u>, 604 F.3d 1202, 1210 (10th Cir. 2010) (<u>citing</u> <u>Hogan</u>, 197 F.3d at 1306). Second, he "must show that the evidence presented at trial would permit a rational jury to find him guilty of the lesser-included offense and acquit him of first degree murder." <u>Id.</u> (<u>quoting</u> <u>Young v. Sirmons</u>, 486 F.3d 655, 670 (10th Cir. 2007)); <u>see also</u> <u>Taylor v. Workman</u>, 554 F.3d 879, 888 (10th Cir. 2009) (<u>quoting</u> <u>Hogan</u>, 197 F .3d at 1308) ("The proper inquiry is whether the defendant presented sufficient evidence to 'allow a jury to rationally conclude' that the defendant was guilty of the lesser-included offense"). "Only if there is evidence which tends to negate an element of the greater offense, which would reduce the charge, should instructions on a lesser included offense be given." <u>Gilson</u>, 520 F.3d at 1234

(citing <u>United States v. Scalf</u>, 708 F.2d 1540, 1546 (10th Cir. 1983) and <u>Fairchild v. State</u>, 998 P.2d 611, 627 (Okla. Crim. App. 1999)).

### A.     The trial court refused to instruct on a requested lesser-included offense.

"Under Oklahoma law, all lesser forms of homicide are considered lesser included offenses of first degree murder." <u>Id.</u> (citing <u>Shrum v. State</u>, 991 P.2d 1032, 1036 (Okla. Crim. App. 1999)). Thus, both of the offenses cited by Petitioner, second-degree murder and first-degree manslaughter, were and are considered lesser-included offenses of first degree murder.

It is undisputed that Petitioner sought and was denied instructions on second-degree depraved mind murder and first-degree manslaughter at trial.  (<u>See</u> O.R. 231-32, 241).

### B.     This Court must defer to the trial court's ruling under the AEDPA.

Petitioner, citing <u>Hogan</u>, 197 F.3d at 1306, argues that the deference to the state court which is normally required under the AEDPA is not required in the situation herein because the OCCA did not reach this issue on the merits, but instead made nothing more than a conclusory finding based on an improper inquiry.  "Deference to the state court under AEDPA is only required for 'any claim that was adjudicated on the merits in State court proceedings.'" <u>Hogan</u>, 197 F.3d at 1306 (<u>quoting</u> 28 U.S.C. § 2254(d)).  Likewise, the Court owes no deference to a state-court decision when it applies a legal rule that differs materially from the rule mandated by the United States Supreme Court. <u>Richie v. Workman</u>, 599 F.3d 1131, 1137 (10th Cir. 2010) (citing <u>Douglas v. Workman</u>, 560 F.3d 1156, 1170 (10th Cir. 2009)).

Here, the OCCA specifically found that "[t]he evidence in the present case does not support the conclusion that [Williams] acted without any premeditated design to effect death" and held that "instructions on second degree depraved mind murder were not warranted, as that

crime was not supported by the evidence." Williams, 22 P.3d at 711-12. Likewise, the OCCA ruled that "an instruction on first degree manslaughter was not warranted, as it was not supported by the evidence." Id. at 713-14. The OCCA cited Beck and found that "the evidence in the present case did not support instructions on any lesser forms of homicide." Id. at 714.

In Hogan, the Tenth Circuit ruled that because the OCCA "made no findings as to whether Hogan had presented sufficient evidence to warrant a first-degree manslaughter instruction, it is axiomatic that there are no findings to which we can give deference. As such, we will consider Hogan's Beck claim on the merits." 197 F.3d at 1306. In contrast, in the instant case, the OCCA did make specific findings as to whether Williams presented sufficient evidence to warrant instruction on each lesser-included offense. See Williams, 22 P.3d at 711-14. Thus, this Court finds that the OCCA reached a decision on the merits of this issue based upon its application of the rules of law as stated in Beck and Hogan.

Moreover, this Court finds that the OCCA's analysis was not contrary to Beck. The proper inquiry is whether the evidence presented at trial would permit a rational jury to find Petitioner guilty of the lesser-included offense and acquit him of first-degree murder. See Phillips, 604 F.3d at 1210; Hogan, 197 F.3d at 1308. Petitioner urges this Court to reject the OCCA's determination because Petitioner claims the OCCA improperly considered whether there was sufficient evidence to warrant a conviction for first-degree murder as opposed to considering whether there was sufficient evidence to warrant instructing the jury on the lesser-included offenses. To the contrary, the OCCA made specific findings regarding the sufficiency of the evidence for the second-degree murder charge, see Williams, 22 P.3d at 711-12, and the first-degree manslaughter charge, see id. at 713. Moreover, the OCCA appropriately cited both

11

Hogan and Beck. Id. at 711, 713. Indeed, the OCCA did discuss the evidence which Petitioner contends would support the lesser-included charges – the fact that Petitioner took a pair of gloves and a roll of duct tape with him to Ms. Hand's home. Id. at 712. The OCCA also noted that "[Williams] disputes the conclusion of premeditation and argues the evidence showed no reason for the victims to feel threatened when he entered their home." Id. Thus, the OCCA engaged in the proper inquiry and its analysis was not contrary to Beck.

Recently, in Phillips, the Tenth Circuit addressed a claim regarding the constitutionality of a failure to give the lesser-included instruction of second-degree depraved mind murder and held that "by limiting its analysis of Mr. Phillips's Beck claim to the sufficiency of the evidence supporting the first-degree murder conviction, the OCCA's reasoning turns Beck on its head, and 'is in gross deviation from, and disregard for, the Court's rule in Beck.'" 604 F.3d at 1212 (quoting Hogan, 197 F.3d at 1305). As a result, the Tenth Circuit held that the OCCA's analysis was contrary to Beck and engaged in *de novo* review of whether the facts warranted a second-degree murder instruction. See id. at 1213-16.

The OCCA's analysis in this case can be distinguished from that of the OCCA in Phillips. In Phillips, the OCCA explicitly based its finding that the evidence did not support an instruction on second-degree murder on the fact that the evidence supported a finding of intent to kill. See Phillips v. State, 989 P.2d 1017, 1035 (Okla. Crim. App. 1999) ("As discussed in Proposition I, we find the evidence showed Appellant acted with the specific intent to effect the death of the victim. Therefore, the evidence does not support the giving of a jury instruction on second degree depraved mind murder, even if it were a lesser included offense."). In contrast, in this case, while the OCCA did engage in some irrelevant discussion pertaining to the sufficiency

of the evidence supporting the first-degree murder charge, see, e.g., Williams, 22 P.3d at 712 (discussing evidence supporting a finding of premeditation and concluding "This evidence is sufficient for any rational trier of fact to find Appellant acted with the premeditated intent to kill the deceased."), there is no indication that this discussion formed the basis for its findings that "the evidence in the present case did not support instructions on any lesser forms of homicide." Id. at 714. Thus, here, in contrast to Phillips, the OCCA's analysis was not contrary to Beck.

Because the OCCA determined this issue on the merits and applied the standard set forth in Beck, this Court's review of the OCCA's decision on the issue is governed by the AEDPA.

> **C.**   ***Second-degree murder instructions were not supported by the evidence.***

The Court must determine whether a jury could rationally find Petitioner "guilty of the lesser offense and acquit him of the greater" Beck, 447 U.S. at 635, and whether there was trial evidence which tends to negate an element of the first-degree murder charge and allow a reduced charge. See Hogan, 197 F.3d at 1305; Gilson, 520 F.3d at 1234.

In analyzing Petitioner's Beck claim, this Court must consider the elements of both first-degree malice aforethought murder and second-degree depraved mind murder in light of the evidence presented at trial. See Malicoat v. Mullin, 426 F.3d 1241, 1253 (10th Cir. 2005). The trial court instructed Petitioner's jury that the elements of first-degree malice aforethought murder are: (1) death of a human; (2) death was unlawful; (3) death was caused by the defendant; and (4) death was caused with malice aforethought. (See O.R. 305). Malice aforethought was further defined as meaning "a deliberate intention to take away the life of a human being." (Id. at 306). The elements of second-degree depraved mind murder are: (1) death of a human; (2) caused by conduct which was imminently dangerous to another person; (3) the

conduct was that of the defendant; (4) the conduct evinced a depraved mind in extreme disregard of human life; and (5) the conduct was not done with the intention of taking the life of any particular individual. Okla. Stat. tit. 21, § 701.8(1); <u>Taylor v. State</u>, 998 P.2d 1225, 1231 (Okla. Crim. App. 2000), abrogated on other grounds. The parties are in agreement that the focus is on the intent element.

Here, Petitioner argues that the same circumstantial evidence which supports a finding of malice aforethought might also support a finding that he possessed a depraved mind in extreme disregard of human life but without intent to kill at the time of the stabbing. Evidence at trial showed that Petitioner was upset and believed he was going to jail immediately before going to the victim's home. (Tr. IV 837). The evidence revealed that Petitioner went to the victim's house with a butcher knife from his home which he placed in a box with a pair of gloves and a roll of duct tape. (<u>Id.</u> at 653-55, 726, 736; Tr. V 891). Evidence showed that thereafter a struggle ensued. During the struggle, Petitioner fatally stabbed the decedent once in her chest. (Tr. IV 640-41, 664, 766-67, 769-70, 853-55). The knife cut through her ribs, through a portion of her left lung, completely through her heart and into her right lung. (<u>Id.</u> at 758-59). Testimony established that the wound occurred quickly. (<u>Id.</u> at 789-90, 796-97). The evidence at trial revealed that after the killing Petitioner was upset and crying. He called his boss and admitted to "killing a girl." (<u>Id.</u> at 806-07, 809-10). He was also crying when he later spoke to Consuela Drew on the phone. (<u>Id.</u> at 839). Petitioner contends that when viewing this evidence a reasonable juror could find that at no point did Petitioner intend to kill the victim, but rather, Petitioner intended merely to harm or scare the victim or to rape or kidnap the victim. Petitioner argues that based on this version of events, a jury could rationally conclude that Petitioner's

14

death was perpetrated by an act imminently dangerous to the victim and evincing a depraved mind, but without a premeditated design to effect death.

In this case, Petitioner relies on evidence that he brought gloves and duct tape with him to the victim's home and on the fact that a struggle ensued prior to the killing to support his claim that the evidence was sufficient to require the trial court to give instruction on second-degree murder. This evidence is not sufficient to negate the malice aforethought element of the first-degree murder charge because, as discussed by the OCCA, even if there was no evidence to suggest that Petitioner formed the intent to kill in advance of going to the victim's home, premeditation sufficient to constitute murder may be formed in an instant, or as the killing is being committed. See Williams, 22 P.3d at 712 (citing Phillips v. State, 989 P.2d 1017, 1029 (Okla. Crim. App. 1999)). There simply was no evidence introduced at trial that tended to negate a finding of malice aforethought. See Gilson, 520 F.3d at 1234 (citing Fairchild, 998 P.2d at 627). This Court must conclude that no jury could rationally acquit Petitioner of first-degree murder and convict him of second-degree depraved mind murder. See Beck, 447 U.S. at 635.[1]

The facts of this case stand in stark contrast to others where relief has been granted on this ground. Both the Hogan and Taylor cases involved testimony from the defendant himself as

---

[1] Petitioner suggests that this case is analogous to Willingham v. Mullin, 296 F.3d 917 (10th Cir. 2002) where the Tenth Circuit found that the evidence presented was legally sufficient to warrant a second-degree murder charge. That case is easily distinguished from the case at bar. In Willingham, the defendant struck the victim in the face several times, slammed her head into a wall, let her fall backward onto the floor and kicked her in the face. Id. at 920. When the victim no longer resisted, the defendant left and the victim asphyxiated on blood from her injuries. Id. In this case, Petitioner did not merely strike and kick Ms. Hand. He plunged a large butcher knife approximately seven inches through Ms. Hand's chest including several vital organs. (See Tr. IV 758-59).

to his mental state at the time of the killing. See Hogan, 197 F.3d at 1301, 1308; Taylor, 554 F.3d at 890-91.

In the Hogan case, Mr. Hogan grabbed a knife from the victim, a longtime friend, who, after a dispute, had threatened to harm Mr. Hogan with it. Mr. Hogan stabbed the victim approximately twenty-five times, creating three wounds that would have been independently fatal. 197 F.3d at 1310. A tape-recorded confession from Mr. Hogan was played at trial. Id. at 1301. During the confession, Mr. Hogan stated that the victim initially grabbed a knife and came at him and that the murder weapon was the knife with which the victim attacked him. Id. at 1308. Mr. Hogan also stated that he feared the victim was retreating into the kitchen to grab another knife. Id. Mr. Hogan's knife injuries were corroborated by medical personnel. Id. The Tenth Circuit held that Mr. Hogan was entitled to a lesser-included offense instruction on first-degree manslaughter because, despite the horrific nature of the crime, and the repeated stabbings, a reasonable jury might find adequate provocation, heat of passion resulting from fear and terror, causation and immediacy, so as to warrant the manslaughter instruction. Id. at 1309.

In Taylor, a jury convicted Mr. Taylor of one count of first-degree murder and three counts of shooting with intent to kill, and sentenced him to death. Taylor, 554 F.3d at 883-84. During a visit with a business contact who owed him $800, Mr. Taylor became startled and shot two people in the head, shot a third person twice, and killed a fourth person, by shooting him twice in the back. Id. at 882-883. The trial court gave an instruction on second-degree depraved mind murder, but the instruction was incorrect. Id. at 886. After Mr. Taylor was convicted of first-degree murder, the OCCA found any error in the instruction harmless, because "[Mr. Taylor] testified that as he ran through the living room, he saw movement out of the corner of his

eyes and fired in that direction twice, killing [the victim]. These facts suggest a design to effect the death of [the victim] and therefore do not support a second degree murder instruction." Taylor, 554 F.3d at 886 (citing Taylor v. State, 998 P.2d 1225, 1231 (Okla. Crim. App. 2000)). Reviewing the OCCA's legal conclusions *de novo*, the Tenth Circuit concluded that if Mr. Taylor did not aim, but rather the gun was simply flailing around as he testified, such behavior would be imminently dangerous to another person, and it would evince a depraved mind with a disregard of human life, but it would not indicate any premeditated design to kill the victim. Taylor, 554 F.3d at 890-91. In addition, the Tenth Circuit found it significant that the trial court had found that the evidence was sufficient to give a second-degree murder instruction, even though that instruction was incorrect. Id. at 891.

In the instant case, unlike in Hogan and Taylor, Petitioner did not testify regarding his mental state at the time of the killing. Furthermore, during first stage, no other direct testimony was offered with respect to Petitioner's mental state at the time of the killing. Nor did the trial court in this case find that evidence was sufficient to warrant a second-degree murder instruction unlike the Taylor case.

In Phillips, Mr. Phillips fatally stabbed the victim once in the chest with a pocketknife. 604 F.3d at 1207. The single stab went into the victim's heart. Id. The medical examiner testified that the more typical wound resulting from a single stab to the chest with a pocketknife would be to a lung, which is more easily treated. Id. at 1214. The medical examiner also stated that the wound was potentially survivable if treatment was given quickly. Id. In addition, there was testimony that prior to the killing Mr. Phillips was emotionally disturbed by recent events that transpired with his father "with whom he had a very troubled and violent relationship." Id.

Likewise, there was testimony that Mr. Phillips was upset and apologetic after the killing. Id. The Tenth Circuit concluded, "Because the facts here show that Mr. Phillips may have been severely emotionally disturbed and raise doubts whether he had the requisite mental state for first-degree murder, we conclude that a jury could rationally find Mr. Phillips 'guilty of the lesser offense and acquit him of the greater.'" Id. at 1213-14. (quoting Beck, 447 U.S. at 635).

In this case, as distinguished from Phillips, there was no testimony that the wound inflicted by Petitioner might have been survivable. In fact, the medical examiner testified here that the death would have occurred within minutes. (Tr. IV 791-92). Likewise, in this case, in contrast to Phillips, while there was brief mention that Petitioner was "upset" before, and "crying" after, the killing, there was no evidence that Petitioner's emotional disturbance rose to the level that it might negate the requisite intent for first-degree murder.

Because there was no evidence introduced at trial which could negate the intent element of first-degree murder and which would allow a reasonable juror to acquit Petitioner of first-degree murder, the OCCA's holding that "instructions on second degree depraved mind murder were not warranted, as that crime was not supported by the evidence" was a reasonable application of Beck. Williams, 22 P.3d at 711-12. Petitioner is not entitled to habeas relief on this claim of error.

### D. *First-degree manslaughter instructions were not supported by the evidence.*

Under Oklahoma law, a person commits first-degree heat of passion manslaughter if the homicide is "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide." Okla. Stat. tit. 21, § 711(2). The

elements of heat of passion manslaughter are: "1) adequate provocation; 2) a passion or emotion such as fear, terror, anger, rage, or resentment; 3) homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and 4) a causal connection between the provocation, passion and homicide." Charm v. State, 924 P.2d 754, 760 (Okla. Crim. App. 1996). Adequate provocation is "any improper conduct of the deceased toward the defendant which naturally or reasonably would have the effect of arousing a sudden heat of passion within a reasonable person in the position of the defendant." Washington v. State, 989 P.2d 960, 968 n. 4 (Okla. Crim. App. 1999).

In considering Petitioner's direct appeal challenge to the trial court's failure to instruct on first-degree manslaughter, the OCCA rejected the claim as follows:

> [Williams] concedes "there [was] no evidence to indicate the victim conducted herself in a manner described by the provocation doctrine." Our review of the evidence supports that conclusion. Further, our review of the evidence shows nothing to support the other elements of first degree manslaughter. Therefore, an instruction on first degree manslaughter was not warranted, as it was not supported by the evidence.

Williams, 22 P.3d at 713.

Despite claiming that the trial court's refusal to give a first-degree manslaughter instruction constitutes constitutional error, Petitioner devotes no argument or briefing to this point of error. Respondent points out that the record is devoid of any evidence supporting the adequate provocation element and that Petitioner admitted such in his brief on direct appeal. Upon review of the record, there is no evidence that Petitioner was adequately provoked. The victim did nothing improper to provoke Petitioner. The evidence simply did not support the first-degree manslaughter instruction he requested. Accordingly, the Court concludes that the OCCA's decision was not an unreasonable application of Beck. See 28 U.S.C. § 2254(d). The

trial court's refusal to give the first-degree manslaughter instruction does not warrant habeas relief.

## II.    Jury Selection

In the second claim, Petitioner argues his Sixth and Fourteenth Amendment rights were violated when prospective juror Beth Downey was improperly excused for cause because she held conscientious objections to the death penalty and Petitioner's trial counsel was not allowed to rehabilitate her. This claim was presented to the OCCA and rejected on its merits. Williams, 22 P.3d at 709-11. In considering Petitioner's objections to the exclusion of Ms. Downey, the OCCA stated:

> While the better approach in examining potential jurors regarding the punishments in a capital murder case is to use the voir dire questions in the order set forth in the uniform instructions, we find the manner in which the trial court conducted voir dire in this case was not error. The trial court's questions to Ms. Downey sufficiently established that she could neither consider nor impose the death penalty in a case where the evidence and law warranted its imposition. Her unequivocal statements that she did not believe in and would not impose the death penalty under any circumstances allowed the trial court to determine whether her views would prevent or substantially impair the performance of her duties. While the trial court did not specifically ask Ms. Downey whether she could follow the law despite her beliefs or set those beliefs aside, it is clear from her responses to other questions that she was irrevocably committed to vote against the death penalty, regardless of what the evidence and law warranted. Accordingly, the trial court did not err in excusing Downey for cause.

Id. at 710 (citations omitted).  With respect to Petitioner's assertion that the trial court erred in refusing to allow him to further question and rehabilitate Ms. Downey, the OCCA noted that "[w]hen the proper questions have been asked by the trial court to determine whether prospective jurors can sit in the case, it is not error to deny defense counsel an opportunity to rehabilitate the excused jurors." Id. (citing Scott v. State, 891 P.2d 1283, 1289-90 (Okla. Crim. App. 1995)).  The OCCA denied the claim of error and held: "The trial court's questions were

adequate to determine whether Ms. Downey could sit as a fair and impartial juror in this case. Accordingly, it was not error to deny defense counsel the opportunity to make further inquiry." Id. at 710-11. Respondent asserts that the OCCA's decision was not an unreasonable application of clearly established federal law.

In Witherspoon v. Illinois, 391 U.S. 510, 522-23 (1968), the United States Supreme Court held a sentence of death cannot be upheld if the jury that imposed or recommended it was chosen by excluding for cause all veniremen who voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. In Adams v. Texas, 448 U.S. 38, 45 (1980), the Court held that "a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." In Wainwright v. Witt, 469 U.S. 412, 420 (1985), the Court held the Adams standard was the appropriate standard for dealing with issues regarding allegations of improper exclusion of jurors in violation of Witherspoon. However, "[r]elevant voir dire questions addressed to this issue need not be framed exclusively in the language of the controlling appellate opinion. . . ." Id. at 433-34. Additionally, a trial judge's decision regarding a potential juror's bias is a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Davis v. Executive Dir. of Depot of Corr., 100 F.3d 750, 777 (10th Cir. 1996). See also Cannon v. Gibson, 259 F.3d 1253, 1279 (10th Cir. 2001); Castro v. Ward, 138 F.3d 810, 824 (10th Cir. 1998). Since issues of credibility and demeanor are critical to a judge's decision, review of such decisions is "quite deferential." Davis, 100 F.3d at 777. "Deference is

necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court to make credibility determinations." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 339 (2003). Upon review, the question is not whether this Court might disagree with the trial court's findings, but whether those findings are fairly supported by the record. <u>Wainwright</u>, 469 U.S. at 434.

Petitioner argues that Ms. Downey was not properly questioned and his trial counsel was denied the opportunity to *voir dire* Ms. Downey about her beliefs with regard to the death penalty. The relevant part of the trial court's inquiry of Ms. Downey follows:

| THE COURT: | Ms. Downey, Mr. Ellard, can you think of any reason why you could not be fair and impartial jurors in this case? Ms. Downey? |
|---|---|
| MS. DOWNEY: | I don't think I can -- I don't believe in the death penalty. |
| THE COURT: | All right. You tell me, then, that your views about the death penalty would prevent or substantially impair you from considering that as a punishment in this case, should the law and the evidence warrant? |
| MS. DOWNEY: | Yes. |
| THE COURT: | You've had some time to think about that, I assume -- |
| MS. DOWNEY: | Yes. |
| THE COURT: | -- during the last -- |
| MS. DOWNEY: | I think it would bother me. I think it would really bother me. |
| THE COURT: | Well, I need to make sure that you and I are communicating. I doubt very seriously that regardless of any of these people's answers, if they were to be asked, would it bother you, the answer would probably be yes. |
| MS. DOWNEY: | I think I would think about it the rest of my life. I really -- |

| | |
|---|---|
| THE COURT: | Well, the question is not -- I doubt very seriously that if that happened, that these people wouldn't think about it the rest of their life. But that's not the question. The question is, are your views such that it would prevent you or substantially impair you from imposing that punishment, should the law and the evidence warrant? |
| MS. DOWNEY: | Yes. |
| THE COURT: | All right. I'll excuse you, ma'am, for cause. |

(Tr. III 309-10). Without further questioning, Ms. Downey was excused for cause after defense counsel's request to *voir dire* the witness was overruled. (Id. at 310-11).

This Court finds that prospective juror Beth Downey was not improperly questioned and excused. Rather, the Court finds ample support for the trial court's decision that the views of prospective juror Downey were so strong that she would not be able to perform her duties as a juror in accordance with the instructions and her oath. See Wainwright, 469 U.S. at 433. Thus, prospective juror Downey was properly excused for cause. The trial judge was face to face with Ms. Downey and a trial judge's "power of observation often proves the most accurate method of ascertaining the truth." Wainwright, 469 U.S. at 434. Since Petitioner offers no evidence to rebut the factual determination of the trial court regarding Ms. Downey's bias against the imposition of the death penalty, the Court cannot grant habeas relief for the dismissal of Ms. Downey. Moreover, Petitioner cites no Supreme Court precedent supporting his claim that the trial court's refusal to allow his counsel to further question Ms. Downey violates his constitutional rights. The OCCA's finding that it was not error to deny defense counsel the opportunity to make further inquiry because the trial court's questions were sufficient to establish that Ms. Downey could not be an impartial juror was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Because Petitioner has not established that the OCCA's

determination of this issue was not an unreasonable application of the above-cited Supreme Court precedent, habeas relief on this issue is denied.

**III.    Second Stage Instructions – Mitigating Evidence**

Petitioner in his third claim for habeas corpus relief asserts that the second stage jury instructions prohibited the jury from considering all relevant mitigating evidence in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Petitioner argues that Supplemental Instruction No. 10 prohibited the jury from considering Kevin Williams's prior conviction as relevant mitigating evidence and that Supplemental Instruction No. 18 improperly limited the jury's consideration of mitigating evidence to only that related to moral culpability or blame.

This claim was presented to the OCCA and rejected on its merits. Williams, 22 P.3d at 727-28.   Respondent contends that the OCCA's determination that the second stage jury instructions did not prohibit the jury from considering all relevant mitigating evidence was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

The Supreme Court has determined that a jury may not be precluded from considering any "constitutionally relevant mitigating evidence." Buchanan v. Angelone, 522 U.S. 269, 276 (1998) (citing Penry v. Lynaugh, 492 U.S. 302, 317-18 (1989) and other cases).  The Supreme Court has described such evidence as "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Eddings v. Oklahoma, 455 U.S. 104, 110 (1982) (quoting Lockett v. Ohio, 438 U.S. 586, 604 (1978)).  "However, the state may shape and structure the jury's consideration of mitigation

24

so long as it does not preclude the jury from giving effect to any relevant mitigating evidence." <u>Buchanan</u>, 522 U.S. at 276 (<u>citing</u> <u>Johnson v. Texas</u>, 509 U.S. 350, 362 (1993); <u>Penry</u>, 492 U.S. at 326; <u>Franklin v. Lynaugh</u>, 487 U.S. 164, 181 (1988)). Concerned that restrictions on a jury's sentencing determination not preclude the jury from being able to give effect to mitigating evidence, the Supreme Court held in <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990), that the standard for determining whether jury instructions satisfy these principles is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."

### A.    *Instruction No. 10*

Petitioner contends that Supplemental Instruction No. 10 improperly prohibited the jury from considering the prior conviction of Kevin Williams, Petitioner's brother, as relevant mitigating evidence. During the sentencing stage, the defense presented the testimony of Kevin Williams and Dr. Stephen Peterson. Kevin testified regarding the abuse he and Petitioner received as children at the hands of their father as children.  (<u>See generally</u> Tr. VII 1168-1228). It was brought out during his testimony that he is a convicted felon. (<u>See</u> <u>id.</u> at 1211-1213).  Dr. Stephen Peterson later testified that at the time Kevin Williams committed the offense for which he was convicted he suffered from mental illness. (<u>See</u> Tr. VIII 1250, 1340-41).

Supplemental Instruction No. 10, the challenged instruction, provided:

> Evidence has been presented that Kevin Williams has heretofore been convicted of a criminal offense. This evidence is called impeachment evidence, and it is offered to show that the witness's testimony is not believable or truthful. If you find that this conviction occurred, you may consider this impeachment evidence in determining what weight and credit to give the credibility of that witness. You may not consider this impeachment evidence as proof of innocence or guilt of the defendant.

You may consider this impeachment evidence only to the extent that you determine it affects the believability of the witness, if at all.

(O.R. 268).

In support of his claim of error, Petitioner argues that the evidence that Petitioner's brother had previously been convicted of a crime[2] is somehow probative of the fact that Petitioner suffered from a mental disorder, and thus, should be considered relevant mitigating evidence. Respondent contends that Kevin Williams's conviction was not relevant mitigating evidence to the imposition of the death penalty and that there is not a reasonable likelihood that the jury applied Instruction No. 10 in a way that prevented consideration of relevant mitigating evidence.

In considering Petitioner's contention that this instruction unconstitutionally prohibited the jury from considering all relevant mitigating evidence, the OCCA stated:

Evidence of Kevin Williams' prior conviction in and of itself is not relevant evidence mitigating against the death penalty for [Williams] because it could not, if believed by the jury, lessen [Williams]'s culpability and the severity of his sentence. See Bryson v. State, 876 P.2d 240, 256-257 (Okl.Cr.1994), . . ., relying on Eddings and Skipper v. South Carolina, 476 U.S. 1, 4 . . . (1986). What is mitigating is that [Williams]'s family had a history of mental disorders and that due to that family heredity there was a strong possibility [Williams] also suffered from similar mental disorders. Evidence of Kevin Williams' prior conviction merely demonstrated the family history of mental problems.

Instruction No. 10 did not prevent the jury from considering Kevin Williams' testimony, if they found it credible, as mitigating evidence. Neither Instruction No. 10 nor any other instructions given to the jury prevented their consideration of the family history of mental disorders as mitigating evidence. Further, Instruction No. 19 specifically informed the jury that mitigating evidence had been introduced of [Williams]'s history of suffering abuse at the hands of his

---

[2] Petitioner misleadingly uses the terms "conviction" and "incarceration" interchangeably in his briefing on this issue. Instruction No. 10 was clearly only applicable to the evidence that Kevin Williams was previously "convicted of a criminal offense." The disputed jury instruction does not refer to the "incarceration" of Kevin Williams.

parents. (O.R.277). Accordingly, we find Instruction No. 10 did not prevent the jury from considering any relevant mitigating evidence. This assignment of error is denied.

Williams, 22 P.3d at 727.

It was not unreasonable for the OCCA to determine that evidence of the prior conviction of Kevin Williams is not relevant evidence mitigating against the death penalty in this case. The prior conviction of Petitioner's brother is neither evidence of "an aspect of a [Petitioner's] character or record" nor evidence of "the circumstances of the offense." See Lockett, 438 U.S. at 604. Rather, it involves the character and record of *Petitioner's brother*. Thus, there is no constitutional requirement that the jury consider the evidence of Kevin Williams's prior conviction as mitigating evidence.

Moreover, applying the standards established in Boyde there is no reasonable likelihood that the jury applied Instruction No. 10 in a way that prevents the consideration of constitutionally relevant evidence. See Boyde, 494 U.S. at 380. Instruction No. 10 merely limited the jury's consideration of the evidence "that Kevin Williams has heretofore been convicted of a criminal offense" to impeachment purposes. Instruction No. 10 did not in any way limit the jury's consideration for mitigation purposes of the evidence of Petitioner's family history of mental disorders and abuse presented by Petitioner through Kevin Williams and Dr. Peterson. Also, as noted by the OCCA, Instruction No. 19 specifically informed the jury that mitigating evidence had been introduced of Petitioner's history of suffering abuse at the hands of his parents as well as evidence that at the time of the crime Petitioner was under the influence of mental/emotional disturbance. (O.R. 277). Furthermore, it was Dr. Peterson, and not Kevin Williams, that testified regarding Kevin's history of mental illness. The fact that the jury was

instructed that Kevin's conviction should only be used to impeach Kevin's testimony does not in any way restrict consideration of Dr. Peterson's testimony regarding Kevin's history of mental illness.

The OCCA clearly complied with the mandates of the above-cited Supreme Court precedent in its analysis of Petitioner's claim that Supplemental Instruction No. 10 improperly prohibited the jury from considering the prior conviction of Kevin Williams as relevant mitigating evidence. Having failed to demonstrate that the OCCA's finding was an unreasonable application of Supreme Court law, Petitioner is not entitled to relief on this issue.

### B.       Instruction No. 18

Petitioner also argues that Supplemental Instruction No. 18 improperly limited the jury's consideration of mitigation evidence to only that related to moral culpability or blame in violation of the Eighth and Fourteenth Amendments. Petitioner contends that the trial court improperly rejected his proposed instruction, which adds to the first sentence of the instruction the phrase "or suggest a reason that the defendant should be punished with a sentence less than death." (O.R. 321-22). Petitioner argues that without that language, the jury was prevented from considering all relevant mitigating evidence. Supplemental Instruction No. 18, OUJI-CR (2d) 4-78, provided:

> Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

> While all twelve jurors must unanimously agree that the State has established beyond a reasonable doubt the existence of at least one aggravating circumstance prior to consideration of the death penalty, unanimous agreement of jurors concerning mitigating circumstances is not required. In addition, mitigating

28

circumstances do not have to be proved beyond a reasonable doubt in order for you to consider them.

(O.R. 276).

In considering Petitioner's contention that this instruction unconstitutionally prohibited the jury from considering all relevant mitigating evidence, the OCCA stated:

> The language of this instruction has been upheld as in accordance with state law and federal constitutional requirements. See Stafford v. State, 731 P.2d 1372, 1375 (Okl.Cr.1987). [Williams]'s argument that his excluded language prevented the jury from considering all relevant mitigating evidence is not persuasive given the other instructions provided to the jury. Initially, Instruction No. 18 also tells the jury that what is to be considered mitigating is for them to decide. This statement broadens any limitations placed on the mitigating evidence through the first sentence. Further, the jury was given an instruction containing approximately ten (10) specifically listed mitigating circumstances. This instruction was approved by [Williams]. Here, [Williams] has failed to specifically set forth any relevant mitigating evidence which the jury was precluded from considering. Having reviewed Instruction No. 18 in its entirety and in context of the other in instructions provided to the jury, we find there is not a reasonable likelihood that the jury would have applied Instruction No. 18 in a way that prevented them from considering any relevant mitigating evidence. See Boyde v. California, 494 U.S. at 380 . . . . Accordingly this assignment of error is denied.

Williams, 22 P.3d at 727-28.

After a careful review of the record, this Court finds that the OCCA's determination that there is not a reasonable likelihood that the jury would have applied Instruction No. 18 in a way that prevented them from considering any relevant mitigating evidence is not an unreasonable application of Boyde. The OCCA thoroughly analyzed this issue. Having failed to demonstrate that the OCCA's finding was an unreasonable application of Supreme Court law, Petitioner is not entitled to relief on this issue.

## IV.   Ineffective Assistance of Trial Counsel

In ground four, Petitioner presents three claims of ineffective assistance of trial counsel. First, he complains that trial counsel failed to subject the State's case to meaningful adversarial testing in the first stage of trial. Second, he claims that trial counsel failed to request proper second-degree felony murder instructions. Lastly, he contends that trial counsel was ineffective for failure to present additional mitigating evidence. The OCCA rejected these claims on direct appeal.

Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of the claims was an unreasonable application of Supreme Court precedent. Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.   In making this determination, a court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Houchin v. Zavaras, 107 F.3d 1465, 1472 (10th Cir. 1997) (quoting Strickland, 466 U.S. at 694). Failure to establish either prong of the Strickland standard will result in denial of relief. Strickland, 466 U.S. at 697.

### A. Failure to Subject State's Case to Meaningful Adversarial Testing at First Stage of Trial

Petitioner contends he was denied the effective assistance of counsel by his counsel's concession of guilt during the first stage of trial. In support of his argument, Petitioner asserts that the first stage opening statement was nothing more than a general "hello" to the jury and request to pay close attention because at the close of trial the jury would have to make their "first important decision" of the proceedings. Petitioner further claims that counsel failed to subject the State's witnesses to meaningful cross-examination and points to four occasions during the cross-examination of Consuela Drew wherein counsel referred to the "murder" in this case. Finally, as to counsel's closing argument, Petitioner asserts counsel essentially admitted Petitioner's guilt because he told the jurors they were about to make an "easy" decision and asked them not to decide sentencing until they heard more evidence in the second stage. Petitioner argues these instances of ineffectiveness resulted in a complete failure by counsel to subject the prosecution's case to meaningful adversarial testing. Therefore, he claims, a presumption of ineffectiveness applies without a showing of prejudice or inquiry into actual trial performance. See United States v. Cronic, 466 U.S. 648, 659 (1984). Respondent asserts that the OCCA's decision was not an unreasonable application of Supreme Court law because Petitioner cannot demonstrate prejudice under the Strickland standard.

The Supreme Court has held that prejudice may be presumed when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," Id. In order to presume prejudice under Cronic, the attorney's failure to test the prosecutor's case must be complete. Bell v. Cone, 535 U.S. 685, 697 (2002). The Tenth Circuit Court of Appeals "has repeatedly found the Cronic presumption inapplicable where counsel actively participated in all phases of the trial proceedings." Turrentine v. Mullin, 390 F.3d 1181, 1208 (10th Cir. 2004) (internal quotation omitted); see also Hooper v. Mullin, 314 F.3d 1162, 1175 (10th Cir. 2002) (Cronic inapplicable where counsel cross-examined witnesses, made evidentiary objections, presented some evidence and gave opening and closing arguments); Cooks v. Ward, 165 F.3d 1283, 1296 (10th Cir. 1998) (Cronic inapplicable where counsel was present in the courtroom, conducted limited cross-examination, made evidentiary objections and gave closing argument). A complete absence of meaningful adversarial testing is found only where the evidence "overwhelmingly established that [the] attorney abandoned the required duty of loyalty to his client," and where counsel "acted with reckless disregard for his client's best interests and, at times, apparently with the intention to weaken his client's case." Turrentine, 390 F.3d at 1208 (quoting Osborn v. Shillinger, 861 F.2d 612, 629 (10th Cir. 1988)).

Upon review of the record, the OCCA's determination that the presumption of prejudice does not apply here was not unreasonable.[3] Williams, 22 P.3d at 728 (citing Cronic, 466 U.S. at 658-59). The record does not support the conclusion that defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing such that prejudice should be presumed. Defense counsel cross-examined the State's first stage witnesses, made objections to

---

[3] Petitioner argues that the OCCA's determination that the presumption of prejudice does not apply was not a ruling on the merits. This Court disagrees.

the State's evidence, and made opening and closing arguments. <u>Cf.</u> <u>Hooper</u>, 314 F.3d at 1175; <u>Cooks</u>, 165 F.3d at 1296.

Likewise, it is clear that counsel's statements regarding the fact that the jury was making their "first important decision" and that the guilt determination was the "easy part" and asking the jury not to make its sentencing determination now, (<u>see</u> Tr. V 1022-23), do not amount to the types of statements that have been held to constitute a concession of guilt in other cases. <u>See, e.g.</u>, <u>United States v. Swanson</u>, 943 F.2d 1070, 1071, 1074 (9th Cir. 1991) (defense counsel's statements during closing argument conceding there was "no reasonable doubt" that his client was the perpetrator and that there was "no reasonable doubt" as to an essential element of the offense charged constituted a concession of guilt); <u>Francis v. Spraggins</u>, 720 F.2d 1190, 1193-94 & n.7 (11th Cir. 1983) (statement by defense counsel during closing argument in guilt phase of a capital trial that "I think he committed the crime of murder" constituted a concession of guilt); <u>Jones v. State</u>, 877 P.2d 1052, 1055 (Nev. 1994) (statement during closing argument that "the evidence shows beyond a reasonable doubt that the defendant" was the perpetrator was a concession of guilt); <u>State v. Harbison</u>, 337 S.E.2d 504, 505 (N.C. 1985) (statement by defense counsel that "I don't feel that [the defendant] should be found innocent" was a concession of guilt).

Petitioner also argues that his trial counsel's closing argument was equivalent to a complete denial of representation during a critical stage of the proceeding, and thus, prejudice should be presumed pursuant to <u>Cronic</u>, 466 U.S. at 659, n.25. Petitioner misstates the rule from <u>Cronic</u> in which the Supreme Court stated, "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from

assisting the accused during a critical stage of the proceeding." Id. Petitioner's trial counsel was neither absent, nor prevented from assisting Petitioner, during closing argument, thus, no presumption of prejudice applies.

Since Cronic does not apply, Petitioner must affirmatively prove actual prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.

The OCCA rejected Petitioner's claim of ineffective assistance during the first stage and stated as follows:

> A review of the record shows counsel did not concede guilt during the first stage. . . .
>
> . . . .
>
> During his cross-examination of Consuela Drew, counsel did refer to the killing in this case as murder. However, counsel never conceded that [Williams] had committed the killing. Therefore, we find this was not a concession of guilt. Due to the substantial evidence of guilt in this case, we find [Williams] was not prejudiced [by] the remarks as there is no reasonable probability that but for counsel's use of the term murder, the proceedings would have been different.
>
> . . . .
>
> In light of the uncontradicted evidence of [Williams]'s participation in the killing, the only real issue in the first stage of trial was [Williams]'s intent. Counsel vigorously challenged the State's theory of premeditation. Counsel's decision to limit his first stage opening statement and closing argument was a reasonable strategy decision to maintain credibility with jurors for sentencing. See Pickens v. Gibson, 206 F.3d 988, 1001 (10th Cir.2000). This Court will not second guess trial strategy on appeal. Short, 980 P.2d at 1107. In Wood v. State, 959 P.2d 1, 16 (Okl.Cr.1998) this Court rejected a similar claim that trial counsel conceded guilt during closing argument. The Court stated:
>
> > In light of the overwhelming evidence against Appellant, trial counsel may have decided not to overstate his case lest he lose credibility for the second stage where he would need it the most. A fine trial lawyer may well decide that guilt could not be doubted

and save the best for saving his life. We do not find counsel's performance deficient under the circumstances.

We find that counsel in this case exercised the skill, judgment and diligence of a competent defense attorney under the circumstances when he employed the strategy to limit his first stage arguments and focus on punishment and culpability.

Williams, 22 P.3d at 728-30.

It is not necessary for this Court to evaluate trial counsel's deficiency under the first prong of Strickland if it easier to resolve the ineffectiveness issue by addressing the prejudice prong. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Strickland, 466 U.S. at 697. Thus, the Court will examine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Upon review of the trial record, exhibits, and the briefs filed herein, this Court finds that Petitioner has failed to demonstrate that he was prejudiced by trial counsel's first-stage performance sufficiently to satisfy the second prong of the Strickland test. The trial transcript and original record reveal overwhelming evidence of Petitioner's participation in the crimes and guilt on both first-degree murder and assault and battery with intent to kill. The challenged statements and first stage performance by Petitioner's trial counsel did not alter the likely outcome of the first stage of the trial. Even if trial counsel's performance had been below the objective standard of reasonableness, "no reasonable probability exists that the outcome" of the

first stage of the trial would have been different. Under <u>Strickland</u>, Petitioner was not prejudiced by the trial counsel's performance in the first stage of trial.

Having found that Petitioner failed to demonstrate that his trial counsel rendered constitutionally ineffective assistance in the first stage of trial, this Court finds that the OCCA's decision was not an unreasonable application of Supreme Court law. Nor was it based on an unreasonable determination of facts in light of the evidence presented. Petitioner failed to meet his burden under 28 U.S.C. § 2254(d). Accordingly, habeas relief on this issue is denied.

### B.     *Failure to Request Proper Second-Degree Felony Murder Instruction*

Petitioner also alleges that trial counsel was ineffective for failing to request instructions on second-degree felony murder based on assault with intent to commit a felony. Petitioner contends that the appropriate underlying felony would be assault with intent to commit rape. The OCCA rejected this claim on the merits finding that counsel was not ineffective for failing to offer second-degree felony murder instructions because such instructions were not warranted by the evidence. <u>Williams</u>, 22 P.3d at 730.

Oklahoma's second-degree murder statute provides: "Homicide is murder in the second degree . . . [w]hen perpetrated by a person engaged in the commission of any felony other than the unlawful acts set out in Section 1, subsection B, of this act." Okla. Stat. tit 21, § 701.8(2). A homicide committed while in the commission of the felony of assault with the intent to commit rape is second-degree felony murder. <u>Id.</u>; Okla. Stat. tit. 21, § 701.7(B). Here, the elements of intent to commit rape would be necessary to establish assault with intent to commit a felony. <u>See</u> OUJI-CR (2d) 4-14 (Assault with Intent to Commit a Felony -Elements); <u>see also</u> OUJI-CR (2d) 4-120 (Rape in the First Degree – Elements).

In Oklahoma, "all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are supported by the evidence." <u>Shrum v. State</u>, 991 P.2d 1032, 1036 (Okla. Crim. App. 1999). The failure of Petitioner's trial counsel to request an appropriate second-degree felony murder instruction was neither objectively unreasonable nor prejudicial to Petitioner under the first and second prongs, respectively, of the ineffective assistance of counsel test because the evidence did not support a second-degree felony murder instruction. <u>Cf.</u> <u>United States v. Cook</u>, 45 F.3d 388, 393 (10th Cir. 1995) (appellate counsel's failure to raise meritless issue on appeal does not constitute ineffective assistance). As recognized by the OCCA, no evidence was introduced during the first stage of trial supporting an assault with intent to rape.[4] <u>See</u> <u>Williams</u>, 22 P.3d at 713. No evidence was introduced by the State or brought out by the defense on cross-examination that Petitioner intended to rape the victim. <u>See</u> <u>id</u>. It was not until the second stage of trial, through Dr. Peterson's expert testimony, that any evidence concerning Petitioner's intent to rape the victim was introduced. <u>See</u> <u>id</u>.

Having found that Petitioner failed to demonstrate that his trial counsel rendered ineffective assistance for failing to request proper second-degree felony murder instructions, this Court finds that the OCCA's decision was not an unreasonable application of Supreme Court law. Nor was it based on an unreasonable determination of facts in light of the evidence presented. Accordingly, habeas relief on this issue is denied.

---

[4] Petitioner did not contend in this proceeding that an instruction on second-degree felony murder based on assault with intent to kidnap would be appropriate; however, Petitioner did make this argument in its appeal to the OCCA. The Court notes that no evidence was introduced supporting assault with intent to kidnap.

### C.    *Mitigating Evidence*

Petitioner contends that his trial counsel was ineffective for failing to call Petitioner's father, Earl Williams, Jr., as a witness and failing to offer any reports documenting the mental illnesses of Petitioner's siblings or instances of child abuse.

During the sentencing stage, the defense presented the testimony of Kevin Williams, Petitioner's brother, and psychiatrist Dr. Stephen Peterson. Kevin Williams testified regarding the abuse he and Petitioner received as children at the hands of their father. (See generally Tr. VII 1168-1228).    As discussed above, it was brought out at trial that Kevin Williams is a convicted felon. (See id. at 1211-13).

Dr. Peterson's testimony concerning the physical abuse suffered by Petitioner in his childhood corroborated Kevin's testimony. (See, e.g., Tr. VIII 1258). He testified that Earl Williams stated he raised his children by the creed "work 'em, beat 'em and feed 'em." (Id. at 1266). Dr. Peterson testified regarding sexual abuse suffered by Petitioner's siblings and the history of diagnosed and suspected mental illnesses in Petitioner's family. (See, e.g., id. at 1250, 1257-58, 1261-63, 1266, 1274, 1284, 1340-41, 1343-44).    Dr. Peterson testified that Petitioner's father admitted to the family history of abuse and that he had beaten both Petitioner and his mother.    (Id. at 1257-58).    Dr. Peterson also testified that he has diagnosed Petitioner with bipolar disorder and a sexual disorder.    (Id. at 1320, 1325-26).    Dr. Peterson based his testimony upon interviews with Petitioner, Petitioner's family members, Petitioner's criminal and court records, and the medical records of Petitioner and his family members.    (Id. at 1243).

On cross-examination, the prosecution challenged that Dr. Peterson's findings were based chiefly on accounts from biased family members and stressed the absence of reports

documenting the mental illness of Petitioner's family members or the childhood abuse. (Id. at 1330-1345). The prosecution also attacked Dr. Peterson as uncredible and biased because he was hired for a purpose and was pro-defense in capital cases. (Id. at 1454-56).

Petitioner complains that on redirect, his trial counsel never sought to admit any of the reports or medical records relied upon by Dr. Peterson nor did trial counsel call Earl Williams, Jr. as a witness. Petitioner argues that without such evidence, he was unable to rebut the prosecution's closing arguments that the mitigation evidence was exaggerated, that the jury should discard all of the mitigation, and that "the only documentation, the only actual thing on paper anywhere is the fact that [Petitioner's family] had a good family life; that [Earl Williams, Jr.] was a minister; that [Earl Williams, Jr.] was a caring father." (Tr. VIII 1454). While Petitioner cites Tenth Circuit caselaw regarding counsel's duty to investigate mitigating evidence, he does not actually assert failure to investigate mitigating evidence as a basis for relief.

The OCCA rejected this claim of error and stated:

> Here, counsel presented two witnesses who testified to [Williams]'s traumatic childhood and his family history of mental disorders. The testimony of Dr. Peterson and Kevin Williams sufficiently rebutted any arguments that Mr. Williams was a caring father with a good family life. The presentation of additional witnesses documenting [Williams]'s childhood and corroborating Dr. Peterson's testimony probably would not have changed the tone of the prosecutor's closing argument. The closing argument in this case followed a familiar pattern and would more than likely have remained the same no matter how many witnesses the defense offered. Further, corroborating Dr. Peterson's testimony with written documentation of the illnesses of [Williams]'s siblings would have been merely cumulative to his testimony. Appellant was not denied the presentation of any relevant mitigation evidence. The presentation of the additional evidence now sought by [Williams] would not have minimized the risk of the death penalty in light of the substantial evidence in aggravation. Trial counsel's decision to not present additional mitigating evidence was reasonable trial strategy under the circumstances. Trial counsel presented a vigorous second

stage defense. Giving deference to the decisions made by trial counsel, we conclude his performance was not constitutionally deficient.

Williams, 22 P.3d at 731.

As recognized above, this Court is not required to evaluate trial counsel's deficiency under the first prong of Strickland if it easier to resolve the ineffectiveness issue by addressing the prejudice prong. See Strickland, 466 U.S. at 697. As applied to the sentencing stage of his trial, Petitioner must demonstrate "a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 695. Petitioner has not met this standard.

"In evaluating prejudice, we must keep in mind the strength of the government's case and the aggravating [circumstances] the jury found as well as the mitigating factors that might have been presented." Castro v. Ward, 138 F.3d 810, 832 (10th Cir. 1998) (internal quotation marks omitted). Here three aggravating circumstances[5] were found to support Petitioner's death sentence: (1) his previous conviction of a felony involving the use or threat of violence; (2) he knowingly created a great risk of death to more than one person; and (3) the continuing threat Petitioner presented to society. The State presented abundant evidence to support each of these circumstances.

The mitigating evidence Petitioner contends should have been presented consists of the testimony of Petitioner's father and the medical and military records which Dr. Peterson relied upon in formulating his expert opinion. From this evidence, the jury admittedly would not have

---

[5] The jury actually returned a verdict finding four aggravating circumstances but on appeal, the OCCA found the "avoid lawful arrest or prosecution" aggravator invalid as it was not supported by the evidence. Williams, 22 P.3d at 723.

learned of significant, if any, new mitigating circumstances. The testimony of Earl Williams, Jr. would likely be largely duplicative of Kevin Williams and Dr. Peterson. Kevin testified regarding Petitioner's upbringing and the abuse he suffered, and Dr. Peterson testified regarding Earl's statements during Dr. Peterson's interview with him. Petitioner's father also would be subject to impeachment as a biased family member and might have lacked credibility in the jury's eyes based upon his past conduct and character. Moreover, putting Petitioner's father on the stand might have opened the door to nonmitagatory testimony regarding other violent conduct by Petitioner of which his father was aware. Likewise, the records relied upon by Dr. Peterson would be duplicative of Dr. Peterson's testimony as Dr. Peterson testified regarding the key mitagatory content of those records. Equally, the admission of those records could have been detrimental to Petitioner's case as those records contained some information which would conflict with Petitioner's theme of a family history of mental illness and abuse. (See, e.g., Tr. VIII 1395-96).

No reasonable probability exists that, had trial counsel presented the additional mitigating evidence, the jury would have imposed a sentence less than death.[6] Petitioner's background, together with the nature and circumstances of the victim's death, presented a strong case in support of the three determinative aggravating circumstances. Mr. Williams was a convicted felon who undisputedly stabbed Ms. Hand to death and then assaulted her roommate. The available mitigating evidence simply did not outweigh these aggravating circumstances. The

---

[6] Moreover, the record indicates that trial counsel's decision not to call Petitioner's father, Earl Williams, Jr., to testify was a tactical decision. (See App. of Ex. in Support of Application for Post-Conviction Relief, Case No. PCD-2000-1650, Ex. 6, O'Connell Aff., ¶ 13). For the reasons discussed above, this Court cannot say that trial counsel's strategy was an unreasonable one.

Court therefore concludes that no prejudice under <u>Strickland</u> resulted from trial counsel's failure to present this mitigating evidence. Having found that Petitioner failed to demonstrate that his trial counsel rendered ineffective assistance for failing to present additional mitigating evidence, this Court finds that the OCCA's decision was not an unreasonable application of <u>Strickland</u>. Accordingly, habeas relief on this issue is denied.

## V.      Evidentiary, Instructional and Procedural Errors

Petitioner contends that the trial court committed several evidentiary, instructional and procedural errors which individually, and as a whole, rendered his trial fundamentally unfair in violation of his due process rights. Petitioner argues that the trial court improperly instructed the jury as to the statutory definition of malice, improperly denied his Motion to Hold Trifurcated Proceedings, improperly allowed the jury to hear the prejudicial testimony of Yolanda Cunningham, improperly admitted evidence of prejudicial phone calls, and improperly admitted a Judgment and Commitment Order.

Habeas review is not available to correct state law evidentiary errors. <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1275 (10th Cir. 1999) (<u>citing</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (habeas review is limited to violations of constitutional rights)). This Court is concerned only with the possible infringement of federal constitutional rights. Accordingly, the Court will review the trial court's evidentiary rulings only insofar as Petitioner's federal constitutional rights may have been impacted. In a habeas proceeding claiming a denial of due process, a court will not question the evidentiary, instructional or procedural rulings of the state court unless the petitioner can show that, because of the trial court's actions, his trial, as a whole, was rendered fundamentally unfair. <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1357 (10th Cir. 1997) (discussing

instructional rulings); <u>Maes v. Thomas</u>, 46 F.3d 979, 987 (10th Cir. 1995) (<u>quoting</u> <u>Tapia v. Tansy</u>, 926 F.2d 1554, 1557 (10th Cir. 1991) (discussing evidentiary and procedural rulings)).

### A. *Failure to Instruct on Statutory Definition of Malice*

Petitioner asserts that the trial court's failure to instruct the jury on the statutory definition of malice rendered his trial fundamentally unfair. Specifically, Petitioner argues the trial court failed to properly set forth the statutory definition of malice found in Okla. Stat. tit. 21, § 701.7(A) which states: "A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." In support of his argument, Petitioner refers to the Committee Comments for OUJI-CR (2d) 4-63 wherein it is stated that the language of § 701.7 was largely adapted from the Georgia Criminal Code and that the Georgia Code addressed express malice and implied malice. However, the Oklahoma Legislature adopted only that portion of the Georgia statute referencing express malice. Petitioner contends that Instruction No. 18 (OUJI-CR (2d) 4-63) improperly permitted the jury to find "malice aforethought" based upon implied malice. Instruction No. 18 stated that "the external circumstances surrounding the commission of a homicidal act **may** be considered in finding whether or not deliberate intent existed in the mind of the defendant to take a human life." (O.R. 307) (emphasis added). Petitioner argues that Instruction No. 18 turned the mandatory requirement that malice be proven by external circumstances into an option.

Petitioner did not object to the instructions given on malice or propose an alternative instruction, thus the OCCA reviewed for plain error. <u>Williams</u>, 22 P.3d at 714. The OCCA,

denying this assignment of error, ruled that the jury was properly instructed on the definition of "malice aforethought" and first-degree malice aforethought murder under Oklahoma law.  Id. The OCCA specifically noted that Instruction No. 17 set forth the definition of "malice aforethought" consistently with § 701.7 and that Instruction No. 18 instructed the jury on the consideration to be given to external circumstances.  Id.  Respondent argues that the Court must accept the OCCA's interpretation of Oklahoma law, and thus, the jury was adequately instructed.

A § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction. Maes, 46 F.3d at 984. "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen, 131 F.3d at 1357 (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)). In Henderson v. Kibbe, the Supreme Court stressed "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" 431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). See also Cummings v. Sirmons, 506 F.3d 1211, 1240 (10th Cir. 2007).

 "State law determines the parameters of the offense and its elements and a federal court may not reinterpret state law." Tillman v. Cook, 215 F.3d 1116, 1131-32 (10th Cir. 2000) (citations omitted).  As a result, this Court is bound by the OCCA's determination that the jury was properly instructed on the definition of "malice aforethought" under Oklahoma law.

The Court finds no infringement of federal constitutional rights in the instruction given to the jury.  The instruction given to the jury on "malice aforethought" did not render trial

fundamentally unfair. Because the OCCA's ruling on this issue was not an unreasonable application of Supreme Court law, Petitioner is denied habeas relief on this ground.

### B. Denial of Motion to Trifurcate

Petitioner contends that the trial court's denial of his Motion to Hold Trifurcated Trial was prejudicial to the proceedings. The record reflects that prior to the second stage of trial, Petitioner filed his Motion to Hold Trifurcated Trial, specifically requesting the sentencing on Count II, the non-capital offense, be resolved first, and capital sentencing on Count I follow thereafter. The trial court overruled the motion, but offered to trifurcate the trial by conducting a capital sentencing stage first and a non-capital sentencing second. Petitioner stood on his motion and declined the trial court's offer.

The OCCA found that the trial court's sentencing procedure was not unduly prejudicial and ruled, "Accordingly, due to the specific limiting instructions used by the court, we find no error in the trial court's combining the sentencing for the capital offense with the non-capital enhanced offense into one proceeding." Williams, 22 P.3d at 715-17. Respondent contends that Petitioner's sentencing was fundamentally fair.

As discussed above, this Court will not question the evidentiary or procedural rulings of the state court unless Petitioner can show that, because of the trial court's actions, his trial, as a whole, was rendered fundamentally unfair. See Maes, 46 F.3d at 987.

Petitioner first argues that pursuant to the Oklahoma statutes and Oklahoma precedent established in Perryman v. State, 990 P.2d 900, 905 (Okla. Crim. App. 1999), when both aggravating circumstances and enhancement with former convictions are at issue, as they were in this case, there cannot be a shared sentencing stage. Again, this Court may not reinterpret

45

state law and is thus bound by the OCCA's resolution of this issue absent a determination that his trial was rendered fundamentally unfair.  See <u>Tillman</u>, 215 F.3d at 1131-32. In <u>Perryman</u>, the court found the combining into one sentencing proceeding of a capital murder count with non-capital non-enhanced offenses was error. <u>See</u> Williams, 22 P.3d at 715 (<u>citing</u> <u>Perryman</u>, 990 P.2d at 905). The OCCA in Petitioner's direct appeal distinguished <u>Perryman</u> as follows:

> While <u>Perryman</u> addressed the division of sentencing issues, the fact that it involved non-capital non-enhanced offenses distinguishes it from the present case. In <u>Perryman</u>, none of the evidence admitted during the second stage was relevant to the determination of the proper punishment for the non-capital offenses. In the present case, evidence of [William]'s prior convictions was relevant to the jury's decision whether the punishment in Count II should be enhanced and in proving the aggravating circumstance of "prior violent felony."

<u>Id</u>. (<u>citing</u> <u>Perryman</u>, 990 P.2d at 905). The OCCA went on to find that neither Okla. Stat. tit. 22, § 860 (now Okla. Stat. tit. 22, § 860.1) (requiring a bifurcated trial for second and subsequent offenses in which evidence of former convictions is to be admitted) nor Okla. Stat. tit. 22, § 701.10 (providing for a separate sentencing proceeding upon conviction of first-degree murder when the death penalty is an option) prohibit the procedure used here.  Thus, this Court is bound by the OCCA's determination that the procedure used in this case was not prohibited by Oklahoma law.

Petitioner next argues that the trial court's instruction to the jury limiting consideration of aggravation and victim impact evidence was insufficient because combining two different punishment schemes in the same proceeding is too unwieldy for a group of laypersons. Petitioner argues that the jurors were given limiting instructions they could not humanly follow, which resulted in a fundamentally unfair sentencing proceeding.

In Gregg v. Georgia, the Supreme Court recognized that the problem of the jury's lack of skill and experience with sentencing procedures will be alleviated if the jury is "given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." 428 U.S. 153, 192-93 (1976). The Supreme Court likewise acknowledged the requirement of careful instructions on the law and how to apply it. Id. at 193.

Here, the jury was specifically instructed that in reaching its decision on punishment for Count II, it was to consider only the evidence incorporated from the first stage and evidence pertaining to the prior convictions. (O.R. 282). Likewise, the jury was specifically instructed not to consider the victim impact evidence or evidence supporting the aggravating circumstances for Count II. (Id.). Further, the jury was specifically instructed as to the prior convictions alleged by the State and the State's burden of proof beyond a reasonable doubt.[7] The OCCA reasonably

---

[7] In footnote 20 of his petition, Petitioner raises the transactional nature of three of his prior convictions arguing that only one of them was admissible as to non-capital sentencing under Oklahoma law. Petitioner was found guilty of first degree rape, first degree kidnapping, first degree battery, and first degree burglary in the State of Arkansas, Case No. CR-92-452-1. These offenses occurred in one incident. The issue of the transactional nature of the offenses was raised in Petitioner's motion to trifurcate (O.R. 223-24) and again at the beginning of the second stage of trial (Tr. VI 1052). Petitioner's objections were overruled and the evidence of the offenses was admitted, under the caveat it would be decided later whether they should be redacted or whether the jury could be adequately instructed to consider the offenses in Case No. CR-92-452-1 as one conviction. (Id. at 1052-53, 1138). The prior convictions were not redacted in any way and the trial court ultimately instructed the jury to consider the Arkansas convictions in Case No. CR-92-452-1 as one conviction. (O.R. 257-58). The OCCA ruled: "Under 21 O.S.1991, § 51.B (now 21 O.S.Supp.1999, § 51.1) it was error for the trial court to admit all of the convictions listed in Case No. CR-92-452-1. However, the limiting instruction properly advised the jury as to the consideration to be given the prior convictions. This cured any error." Williams, 22 P.3d at 716, n.7. This Court finds that the admission of the prior convictions did not result in a federal constitutional violation and did not render Petitioner's trial fundamentally unfair.

found that the instructions were specific enough to clearly channel the jury's decision-making process between the non-capital and the capital offenses. Williams, 22 P.3d at 716.

A jury is presumed to follow the Court's instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); see also United States. v. Carter, 973 F.2d 1509, 1513 (10th. Cir. 1992) ("We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions."). The instructions here were clear, explicit and unambiguous. There is nothing in the record to indicate the jury could not follow these instructions.

Petitioner also argues that by combining the sentencing proceedings for the capital and non-capital offenses, he was not able to argue that he should not be sentenced to death because he had already been given a severe sentence in Count II. Neither the procedure used in this case nor the court's instructions limited Petitioner's ability to argue for the lightest possible sentence in either count. Petitioner further contends that combining the sentencing proceedings somehow denied Petitioner of a right to present information relevant to a showing of future dangerousness.

 Contrary to Petitioner's claim, it is not evident what additional information would have been before the jury in deciding the appropriateness of the death penalty had the jury sentenced Petitioner first for the non-capital offense. Any evidence of his future dangerousness or lack thereof because of incarceration, together with the prior violent felonies, was properly before the jury in making their sentencing determination as to Count I as this determination was made at the same time as the sentencing determination for Count II.

The Court finds no infringement of federal constitutional rights in the procedure utilized by the trial court here.  Upon review of the record, Petitioner has not shown that the trial court's

denial of Petitioner's Motion to Hold Trifurcated Trial rendered the sentencing proceedings fundamentally unfair.  Because OCCA's resolution of this issue was not an unreasonable application of Supreme Court law, Petitioner is not entitled to relief on this claim.

### C.  *Testimony of Yolanda Cunningham*

Petitioner next contends that his trial was rendered fundamentally unfair by the testimony of witness Yolanda Cunningham due to lack of notice regarding the substance of her testimony and her emotional outburst during trial.  Respondent contends that Ms. Cunningham's testimony and outburst did not cause Petitioner's trial to be fundamentally unfair.

During the second stage of trial, the prosecution introduced the testimony of Yolanda Cunningham.  Ms. Cunningham testified that between July 5 and July 8, 1992, Petitioner raped her four times while she was held in his apartment and not allowed to leave. She also testified to a separate incident which occurred when she was five months pregnant. She said that Petitioner "put [her] down on the ground" and also stated, "You don't tell me about hurt. It took me seven years to get over that."  (Tr. VI 1069).  It is undisputed that Ms. Cunningham was an emotional witness who at the time she gave the above-referenced testimony raised her voice to shout over the voice of the trial judge. At that point, the trial court recessed. (Tr. VI 1069-71). Petitioner's counsel moved for a mistrial, in part, on the basis that no pre-trial notice had been received of any rape committed when Cunningham was five months pregnant. The motion was overruled. (Id. at 1069-71).  The State's Notice of Evidence in Aggravation stated in part:

> Yolanda Cunningham will testify that between July 5, 1992, and July 8, 1992, the Defendant raped her four (4) times. During this time she was held in Defendant's apartment and not allowed to leave. . . . She will testify that he raped her before but she never reported it. She will testify that he had hit her at least once during their relationship.

(O.R. 197-98).  The trial judge noted for the record the witness was emotional and that she was being treated for a mental illness. (Tr. VI 1071). The prosecution indicated it was not going to ask any further questions and risk another emotional outburst. Both Ms. Cunningham and the jury were returned to the courtroom, both parties indicated no further questions would be asked, and the witness was excused.  (Id. at 1073). Petitioner did not request an admonishment to the jury and no admonishment was given.

On direct appeal, the OCCA denied the assignment of error on this issue. The appellate court ruled that Petitioner was given adequate notice of the substance of Ms. Cunningham's testimony, and found that the trial court took appropriate measures to prevent undue prejudice to Petitioner as a result of Ms. Cunningham's outburst.  The OCCA found that the omission of an admonishment to the jury following Ms. Cunningham's outburst was not plain error.[8] Williams, 22 P.3d at 717-18.

Petitioner will be entitled to relief on this claim only if he can establish that the admission of this testimony rendered the trial fundamentally unfair. Smith v. Gibson, 197 F.3d 454, 460 (10th Cir. 1999) (citing Scrivner v. Tansy, 68 F.3d 1234, 1239-40 (10th Cir. 1995)).

Upon review of the record, Petitioner has not shown that the admission of Yolanda Cunningham's testimony rendered the sentencing proceedings fundamentally unfair.   The incident was of short duration and the trial court's measures appropriately reduced the risk of undue prejudice to Petitioner. Ms. Cunningham's testimony regarding Petitioner's violent attacks on her were clearly relevant to establishing the aggravating circumstances.  The OCCA's

---

[8] Because Petitioner did not request an admonishment, the OCCA reviewed the failure to admonish for plain error.  Williams, 22 P.3d at 717-18.

resolution was not an unreasonable application of Supreme Court law, and thus, Petitioner is not entitled to relief on this claim.

### D.    *Testimony Regarding Prejudicial Phone Calls*

Petitioner argues that the introduction of testimony regarding harassing phone calls in the second stage of trial in support of the continuing threat aggravating circumstance rendered the proceedings fundamentally unfair in violation of due process and the Eighth Amendment. Petitioner argues that the evidence was irrelevant and more prejudicial than probative. Petitioner's motion in limine to exclude evidence of the harassing phone calls and his objections during Ms. Sauser's testimony were overruled.   The OCCA denied this claim on the merits. Respondent contends that Petitioner's sentencing proceeding was not rendered fundamentally unfair by the admission of the evidence of harassing phone calls.

During the second stage of trial, the prosecution presented the testimony of Michelle Sauser concerning harassing phone calls she had received. (See Tr. VI 1102-11). She stated that she and her husband purchased meat from Petitioner in February 1997 and shortly thereafter she received harassing phone calls from two to ten times a day over an eight week period of time. (Id. at 1102-1105).   She stated that at first the caller would call and be silent. Over time, the caller began to groan and moan. Eventually, the caller began to talk and whisper. (Id. at 1104-05). The caller stated that he wanted to have sex with her and be with her "at any cost," that he wanted to tie her up and perform certain sexual acts, and that he wanted to taste her blood. (Id. at 1106).   Eventually, a tap was placed on Ms. Sauser's phone by the police and she recognized the voice as that of Petitioner. (Id. at 1106-07, 1109).   When she identified him over the phone, he

hung up. The call was traced to a pay phone. Sauser did not receive any further calls. (Id. at 1109-11). A week later LeAnna Hand was killed. (Id. at 1111).

Petitioner argues this evidence was not relevant because it did not show a pattern of violent conduct which was likely to continue in the future. He argues the comments made over the phone were in the context of a sexual fantasy and were not threats of violence.

Okla. Stat. tit. 21, § 701.12(7) sets forth the continuing threat aggravator as follows: "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." To support this aggravator, "the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future." Turrentine v. State, 965 P.2d 955, 977 (Okla. Crim. App. 1998). Under Oklahoma law, evidence of unadjudicated bad acts is admissible in a capital case to prove a defendant constitutes a continuing threat to society. Douglas v. State, 951 P.2d 651, 675 (Okla. Crim. App. 1997).

On direct appeal, the OCCA determined the evidence presented through the testimony of Michelle Sauser was probative of the fact that Petitioner constitutes a continuing threat to society. Williams, 22 P.3d at 720. Explaining its rationale, the OCCA stated:

> [Williams]'s characterization of his conduct as non-violent is not accurate. While his phone calls might not have had any explicit references to crimes such as kidnapping or rape, the acts described by [Williams], sexual and otherwise, were not consensual and would only be accomplished by overcoming Ms. Sauser's will. Such conduct would therefore be criminal. The phone calls demonstrate a willingness and propensity on the part of [Williams] to engage in criminal behavior that puts other people at risk.

> Further, the evidence was properly admitted when considered with Dr. Peterson's testimony of [Williams]'s conduct while in jail. Dr. Peterson testified that while incarcerated in the Arkansas Department of Corrections from 1993 to 1996, [Williams] continued to have sexual fantasies. These fantasies included

52

vulgar talk and phone sex to female guards while he was a trustee. Upon his release, [Williams] sent a sexually explicit note to the counselor who was treating him for his sexual problems. Dr. Peterson also testified [Williams]'s fantasies continued after his release and included women who purchased meat from him. This evidence, combined with the phone calls made to Ms. Sauser only weeks before Hand's murder, shows a pattern of escalating violent sexual conduct which supports the jury's finding of the probability of future dangerousness which constitutes a continuing threat to society.

Id. at 720 -21.

Petitioner also argued that Ms Sauser's testimony was more prejudicial than probative under Okla. Stat. tit. 12, § 2403. Here, Petitioner specifically alleges that Ms. Sauser's testimony that Petitioner's phone calls placed her in such fear that she was afraid to leave the house, she was afraid for her children and that she would wake up in the middle of the night assuming the caller was in her home was not probative and was prejudicial and unfair. (See Tr. VI 1107-08). Petitioner's objection at trial came after this testimony was given. (Id.). The trial court ruled that had the objection been made timely it would have been sustained on grounds of relevancy, however, since the objection was not timely made, all the court could do was end such testimony. (Id.).

Section 2403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." The OCCA ruled that Ms. Sauser's testimony regarding her emotions and fear was not relevant, but ruled that "in light of the other evidence presented in support of the aggravator, the error in admitting the testimony was harmless as it did not result in a miscarriage of justice, or constitute a substantial violation of a constitutional or statutory right." Williams, 22 P.3d at 721.

To be entitled to federal habeas relief, Petitioner must establish that the OCCA's resolution of this issue is contrary to or an unreasonable application of clearly established federal law. Considerable deference must be given to state court evidentiary rulings, and the Court may not provide habeas relief unless those rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002). Likewise, as previously stated, this Court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." Duvall, 139 F.3d at 787 (citing Hopkinson v. Shillinger, 866 F.2d 1185, 1197 (10th Cir. 1989), overruled on other grounds by Sawyer v. Smith, 497 U.S. 227 (1990)).

In this case, Petitioner has not demonstrated that the trial court's evidentiary rulings admitting the testimony of Michelle Sauser rendered his trial, as a whole, fundamentally unfair. The OCCA explained that the testimony of Ms. Sauser was generally relevant to the continuing threat aggravator, was not unduly prejudicial and the admission of irrelevant testimony was harmless. Williams, 22 P.3d at 720-21. This Court agrees. The Court finds no infringement of federal constitutional rights in the admission of the questioned testimony. The admission of Michelle Sauser's testimony did not render Petitioner's trial fundamentally unfair. Because the OCCA's rejection of this issue was not an unreasonable application of Supreme Court law, Petitioner is not entitled to habeas corpus relief on this portion of his claim.

### E.    Judgment and Commitment Order

Petitioner contends that the admission of State's Exhibit 67, a judgment and commitment order from the circuit court of Jefferson County, Arkansas, reflecting a prior conviction for the

crime of rape, violated his due process and confrontation rights and made the death sentence unreliable in violation of the Eighth and Fourteenth Amendments. Petitioner argues that the exhibit should not have been admitted because it was both inadmissible hearsay and insufficient proof of the conviction it was offered to prove because it did not establish it was entered on a plea of guilty. The trial court overruled Petitioner's objection to Exhibit 67 on the grounds the exhibit was certified and the omission was merely a scrivener's error. (Tr. VI 1052-53, 1139). The OCCA denied this assignment of error on the merits.[9] Respondent contends that admission of the exhibit did not render Petitioner's sentencing fundamentally unfair.

Petitioner first argues that the exhibit was inadmissible hearsay as it failed to fall within the hearsay objection for final judgments and sentences found in Okla. Stat. tit. 12, § 2803(22) which states as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> 22. Evidence of a final judgment, entered after a trial or upon a plea of guilty, but not upon a plea of nolo contendere, adjudging a person guilty of a crime punishable by death or imprisonment in excess of one (1) year, to prove any fact essential to sustain the judgment, but not including, when offered by the state in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility;

Petitioner contends that State's Exhibit 67 does not fall within the hearsay exception because it does not establish that his conviction was entered upon a plea of guilty. Petitioner also argues that Exhibit 67 was insufficient to constitute a judgment and sentence under

---

[9] Petitioner failed to object to the exhibit at the time the exhibit was introduced. However, Petitioner later objected to the admission of the exhibit on the grounds that the exhibit did not reflect whether a plea of guilty or *nolo contendere* was entered. Due to Petitioner's failure to timely object, the OCCA reviewed only for plain error. Williams, 22 P.3d. at 724.

Oklahoma law. The OCCA found that the Exhibit 67 was not inadmissible hearsay and that it adequately reflects a valid judgment and sentence. The OCCA explained the rationale behind its decision:

> The Court has had few opportunities to review section 2803(22). In Wade v. State, 624 P.2d 86, 91 (Okl.Cr.1981) the appellant challenged the use of a court minute introduced to prove a prior conviction from Louisiana. The appellant claimed the exhibit was inadmissible hearsay as it did not state it was a final judgment, nor did it in any way state that the judgment was pronounced in accordance with the verdict. In finding the exhibit properly admitted, this Court stated:
>
> > Section 2803(22) applies by its terms to a final judgment offered to prove a fact essential to the judgment. This is not the case where the fact to be proved is the historical occurrence of the conviction for habitual offender purposes. This evidence is more properly entered under the Section 2803(8) exception for public records, where no issue as to the definition of judgment is presented. . . .
>
> 624 P.2d at 91.
>
> In the present case, the Judgment and Commitment Order indicates [Williams] appeared personally before the court with legal counsel, was advised of his constitutional rights, and entered a knowing and voluntary plea. The order further sets forth [Williams]'s name and his attorney's name, the offense of rape, the time to serve at the Arkansas Department of Corrections as twenty years with ten suspended, and that the sentence is to run concurrent with the sentence imposed in the case reflected in State's Exhibit 66. The order is signed by the circuit judge and certified by the clerk. State's Exhibit 66 reflects [Williams] pled guilty and was convicted of four separate felonies, three of which were violent crimes.
>
> The document for all purposes reflects a valid final judgment and sentence. It adequately reflects appellant was advised of his rights and represented by counsel. See Staten v. State, 738 P.2d 565, 566 (Okl.Cr.1987). The failure to check the box indicating whether the conviction was based upon a plea of guilty or a plea of nolo contendere appears to have been a scrivener's error. We find that omission does not render the conviction invalid for purposes of sentencing. Therefore, we find the trial judge did not abuse his discretion in admitting the order into evidence and the order was properly submitted to the jury

in support of the aggravating circumstances of prior violent felony and continuing threat. Accordingly, this assignment of error is denied.

Williams, 22 P.3d at 725.

Considerable deference must be given to state court evidentiary rulings, and the Court may not provide habeas relief unless those rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett, 306 F.3d at 999. Likewise, as previously stated, this Court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." Duvall, 139 F.3d at 787 (further citation omitted).

In this case, Petitioner has not demonstrated that the trial court's evidentiary rulings admitting State's Exhibit 67 rendered his trial, as a whole, fundamentally unfair. The OCCA found that the exhibit was admissible under a hearsay exception and that it bore sufficient indicia that the due process requirements were met in the prior proceeding to constitute a valid judgment under Oklahoma law.[10] Williams, 22 P.3d at 724-25. This Court agrees. The Court finds no

---

[10] Likewise, as to Petitioner's claim that the admission of the exhibit violated the Confrontation Clause, a habeas court considers the state of constitutional law at the time that the applicant's conviction became final. See Williams v. Taylor, 529 U.S. 362, 380 (2000). Petitioner's conviction became final when the United States Supreme Court denied certiorari on his direct appeal on September 7, 2002. See Allen v. Reed, 427 F.3d 767, 774 (10th Cir. 2005) (citing Caspari v. Bohlen, 510 U.S. 383, 390 (1994)). At that time the admission of hearsay did not violate the Confrontation Clause if the statement fell within a "firmly rooted" hearsay exception, or if the statement was supported by "particularized guarantees of trustworthiness." Stevens v. Ortiz, 465 F.3d 1229, 1236 (10th Cir. 2006) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)). Here, as determined by the OCCA, the exhibit fell within a hearsay exception and further, it is supported by "particularized guarantees of trustworthiness" as it was signed by the judge, certified by the court clerk, and shows that Petitioner appeared personally before the court with legal counsel. See Williams, 22 P.3d at 725.

infringement of federal constitutional rights in the admission of Exhibit 67. The admission of the judgment and commitment order did not render Petitioner's trial fundamentally unfair. Because the OCCA's rejection of this issue was not an unreasonable application of Supreme Court law, Petitioner is not entitled to habeas corpus relief on this portion of his claim.

### F. Cumulative Errors

Petitioner argues that the combination of alleged evidentiary, instructional and procedural errors rendered the proceedings fundamentally unfair. Respondent contends that Petitioner never presented the instant claim to the OCCA either on direct appeal or in a collateral proceeding, and thus, the claim is unexhausted. Respondent contends that the Court should nonetheless deny the unexhausted claim on its merits pursuant to 28 U.S.C. § 2254(b)(2) at the same time that the petition is denied on the merits.

The instant claim lacks merit because the combination of the above-listed alleged evidentiary, instructional and procedural errors does not render Petitioner's trial fundamentally unfair. The Court reviews alleged evidentiary, instructional and procedural errors in light of the "trial as a whole" to determine if their effect was to cause the trial to be fundamentally unfair. Nguyen, 131 F.3d at 1357; Maes, 46 F.3d at 987. Thus, in reviewing each of the above-listed sub-propositions, this Court has evaluated the alleged error in light of the entire trial – which necessarily includes the other alleged evidentiary, instructional and procedural errors. Furthermore, the combination of the alleged errors does not render the trial fundamentally as the only actual error that has been identified was the admission of Ms. Sauser's testimony regarding her reaction to Petitioner's threatening phone calls. For the reasons stated above, this evidence

did not render Petitioner's trial fundamentally unfair. Petitioner's unexhausted claim is therefore denied.

## VI.     Former Felony Convictions – Aggravating Circumstances

Petitioner contends his constitutional rights were violated because the same criminal conduct (i.e., his record of prior felony convictions) was used by the State to support both the "continuing threat" aggravator and the "prior conviction of violent felonies" aggravator. In disposing of Petitioner's direct appeal, the OCCA rejected this argument:

> This Court has upheld the use of the same act or course of conduct to support more than one aggravating circumstance where the evidence shows different aspects of the defendant's character or crime. Bernay v. State, 989 P.2d 998, 1016 (Okl.Cr.1999); Turrentine [v. State], 965 P.2d [955,] 978 [(Okla. Crim. App. 1998)]; Cannon v. State, 961 P.2d 838, 852-53 (Okl.Cr.1998); Medlock v. State, 887 P.2d 1333, 1350 (Okl.Cr.1994). . . . Further, the Tenth Circuit has ruled that the two aggravating circumstances at issue here do not impermissibly overlap. Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir.1998).

> The prior violent felony aggravator looks to a defendant's criminally violent past to determine whether, when combined with the murder for which he has just been convicted, a death sentence is warranted. The continuing threat aggravator looks toward [Williams]'s future conduct and the need for protection of society from that probable future criminal conduct. As we stated in Woodruff v. State, 846 P.2d 1124, 1146 (Okl.Cr.) . . . :

>> The presentation of Appellant's past history of criminal behavior (the prior convictions for solicitation to commit murder) to prove the "prior violent felony" aggravating circumstance and the presentation of Appellant's propensity for committing future harm (evidence of the Thompson homicide) to prove "continuing threat" address separate and distinct aspects of Appellant's conduct and provide multiple reasons to impose the death penalty. This situation is distinguishable from cases in which multiple aggravators generally describe the same behavior and impose a more severe penalty for exactly the same reasons.

> Accordingly, we find the aggravators in this case address separate and distinct aspects of [Williams]'s conduct. Use of the prior convictions to support two aggravators was not error. This assignment of error is denied.

Williams, 22 P.3d at 725-26.

Notably, Petitioner cites no Supreme Court cases in support of this claim. Instead, he relies primarily on a case from the Tenth Circuit, United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996). In McCullah, the court held that "double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." Id. at 1111. Such precedent does not, however, stand for the proposition that any time evidence supports more than one aggravating circumstance, those circumstances impermissibly overlap, *per se*.

The Tenth Circuit has repeatedly held that McCullah does not prohibit the use of the same evidence in support of more than one aggravator. See Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000); Trice v. Ward, 196 F.3d 1151, 1173-74 (10th Cir. 1999); Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998). "The test we apply is not whether certain evidence is relevant to both aggravators, but rather, whether one aggravating circumstance 'necessarily subsumes' the other." Cooks, 165 F.3d at 1289 (quoting McCullah, 76 F.3d at 1111).

As previously stated, the AEDPA requires the application of Supreme Court precedent in determining whether the state court proceeding violated clearly established federal law. See 28 U.S.C. § 2254(d)(1). Because there is no Supreme Court precedent regarding duplicative aggravating circumstances, this Court must deny habeas relief on this basis. However, even assuming arguendo that the AEDPA standards allow Petitioner to rely on a circuit court case such as McCullah as a basis for federal habeas relief, it is apparent the jury in Petitioner's case did not "double count" aggravating factors and that the two aggravating factors at issue here did not "necessarily subsume" each other. As the OCCA noted, the two aggravating factors at issue

focused on different aspects of Petitioner's conduct. The "prior conviction of a violent felony" aggravator focused solely on Petitioner's past criminally violent behavior. In contrast, the "continuing threat" aggravator focused on future conduct and whether Petitioner was likely to engage in violent criminal behavior in the future and whether he would be a threat to society as a result. Although this factor was undoubtedly based in part on Petitioner's previous crimes, it arguably focused on different aspects of those crimes than did the "prior violent felony" factor (e.g., whether any aspects of Petitioner's prior crimes suggested that he was likely to engage in future violent behavior). Moreover, the continuing threat aggravator was also based on other facts as well, including those specifically listed by the Court of Criminal Appeals.

Because the OCCA's rejection of this issue was not an unreasonable application of clearly established federal law, Petitioner is not entitled to habeas corpus relief on this portion of his claim.

## VII. Insufficient Evidence – "Great Risk of Death" Aggravating Circumstance

In his seventh claim, Williams contends that the prosecution failed to present sufficient evidence at trial to support the "knowingly created a great risk of death to more than one person" aggravating circumstance. The OCCA rejected this argument and denied relief, as follows:

> After [Williams] killed Hand, he kicked in the door to Elizabeth Hill's bedroom and ripped the phone from her hand. He tackled her as she tried to run out of the duplex. Placing both hands around her neck, he choked her. Hill testified she could not breathe and that somehow she freed herself and ran out of the duplex. [Williams] argues that because Hall [sic] never lost consciousness, did not sustain any permanent physical injury, admitted she had no idea how she got away, and as no weapon was used, the evidence was insufficient to prove there was any risk of death.

> This aggravating circumstance is proved by a defendant's acts which create a risk of death to another "in close proximity, in terms of time, location, and intent" to the killing. Le v. State, 947 P.2d [535,] 549 [(Okla. Crim. App. 1997)]. The

gravamen of the circumstance is not the number of persons killed, but the callous creation of the risk to more than one person. <u>McCracken v. State</u>, 887 P.2d 323, 332 (Okl.Cr.1994) . . . .

Here, [Williams] choked Hill. That he did not choke her to death does not invalidate the aggravator. While [Williams] may not have verbally threatened Ms. Hill's life, choking her certainly amounts to a threat to take away her life. [Williams] contends it is possible he let Hill go thereby negating the intent to kill her. The evidence is not clear as to exactly how Ms. Hill got away from [Williams], and we will not speculate on possibilities. That she was not sure how she got away does not reduce the actual risk to her. The jury looked at the evidence of the attack on Ms. Hill and found it sufficient to sustain a conviction for assault and battery with intent to kill. We have reviewed the evidence for purposes of sustaining the aggravator and find it sufficient to show [Williams] threatened the life of Ms. Hill and had the apparent ability and means of taking her life. We reject [Williams]'s argument that Ms. Hill's life was not placed in actual great risk of death and find the evidence supported the jury's finding of the aggravator. This assignment of error is denied.

<u>Williams</u>, 22 P.3d at 724 (footnote omitted).

In reviewing a claim of insufficient evidence, this Court must first ask whether, viewing the evidence in a light most favorable to the State, there was sufficient evidence for any rational fact finder to find this aggravating factor beyond a reasonable doubt. <u>See</u> <u>LaFevers v. Gibson</u>, 182 F.3d 705, 723 (10th Cir. 1999) (<u>applying</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)). In applying the <u>Jackson</u> standard, the Court looks to Oklahoma law to determine the "substantive elements" of the "great risk of death to more than one person" aggravator. The OCCA has consistently interpreted the "great risk of death to more than one person" aggravating circumstance in two ways. The state court has held that more than one person need not be killed, only that the defendant knowingly creates a great risk of death to more than one person. <u>See</u> <u>Le</u>, 947 P.2d at 549; <u>accord</u> <u>Trice v. Ward</u>, 196 F.3d 1151, 1173 (10th Cir. 1999) (holding that evidence supported the jury's finding of the great risk of death to more than one person aggravator, where the petitioner murdered one victim and delivered life threatening blows to a

second victim).   In addition, the OCCA has held the fact that more than one person is killed satisfies this aggravator.  Slaughter v. State, 950 P.2d 839, 858 (Okla. Crim. App. 1997).

In the present matter, it is uncontroverted that Petitioner caused the death of Ms. Hand, and further, that he choked Ms. Hill.  The jury found the evidence relating to the attack on Ms. Hill sufficient to convict Petitioner of assault and battery with intent to kill.  Such facts are more than sufficient to support the jury's finding of the aggravating circumstance of "great risk of death." The OCCA found sufficient evidence to support the jury's decision, and its decision was not an unreasonable application of the Jackson standard.  Habeas relief is denied on this issue.

## VIII.  Prosecutorial Misconduct

For his eighth claim, Petitioner alleges that he was deprived of his rights under the Eighth and Fourteenth Amendments due to prosecutorial misconduct.  Respondent contends that the OCCA's decision that the prosecutor's comments neither violated the presumption of innocence nor rendered Petitioner's trial fundamentally unfair is not a decision contrary to, or an unreasonable application of, established Supreme Court precedent.

Petitioner specifically complains about the following comment made during the prosecution's first stage closing argument: "So ladies and gentlemen, all I ask you to do is consider the evidence when you go back there, but realize that this case is really about sentencing. There is no question about guilt." (Tr. V 1024).   At trial, Petitioner's counsel objected to the comment, the trial court sustained the objection, admonished the jury, and told the jury "this is about guilt." (Id.).

On direct appeal, the OCCA rejected Petitioner's argument and denied relief, as follows:

[Williams] now argues on appeal that in spite of the admonishment, the error is reversible when considered in conjunction with trial counsel's failure to challenge guilt.

A trial court's admonition to the jury to disregard the remarks of counsel usually cures any error unless it is of such nature, after considering the evidence, that the error appears to have determined the verdict. The comment in question was made during the second portion of the State's closing argument. It was an isolated remark which was not repeated. Except for the statement in question, the prosecutor's closing arguments were proper comments on the evidence and on the jury's duty to determine whether the State had met its burden of proof beyond a reasonable doubt.

Contrary to [Williams]'s claim, the presumption of innocence was not violated. No remark was made that the presumption of innocence did not apply. Further, the jury received specific written instructions on the presumption of innocence and the State's burden of proof. The jury was specifically told what the attorneys said in closing argument was purely argument and not evidence to be considered in reaching their verdict. Viewing the comment and the admonishment in context of the trial, the comment was not outcome determinative and the trial court's admonition was sufficient to cure any error. Contrary to [Williams]'s claim, counsel did challenge guilt in this case, thereby reducing any negative impact this comment may have had on the trial. This assignment of error is denied

Williams, 22 P.3d at 711 (citation omitted).

Petitioner also contends that the OCCA's decision does not warrant deferential treatment under the AEDPA because "the OCCA did not consider established Federal Law in its decision." (Dkt. #25 at 72) (citing Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002)). This is not the correct standard as to whether AEDPA deference applies. As noted by the Supreme Court in Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam), the failure to discuss or even to be aware of federal precedent does not in itself render a state court's decision contrary to federal law. The Supreme Court thus applied the AEDPA standard to a claim which the state court disposed of without citing controlling Supreme Court precedent. Id. at 366. Similarly, in Cook v. McKune, the Tenth Circuit recognized that Early clarified discord between conflicting Tenth Circuit cases

as to when deference under the AEDPA applies and applied AEDPA deference to an OCCA ruling that cited only Oklahoma caselaw. 323 F.3d 825, 831 (10th Cir. 2003). Accord Hawkins v. Mullin, 291 F.3d 658, 677 (10th Cir. 2002) (applying the AEDPA standard where state appellate court only discussed state law). The inquiry here is whether each claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); see also Le, 311 F.3d at 1010-11. The OCCA adjudicated this claim on the merits as demonstrated above. This Court must therefore apply the AEDPA standard to determine whether the OCCA's ruling on this issue was an unreasonable application of Supreme Court precedent.

Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion). When a prosecutor's comment or argument deprives Petitioner of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair. Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). A prosecutor's improper comment or argument which does not deprive a defendant of a specific constitutional right will require the reversal of a state conviction only where those remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. Donnelly, 416 U.S. at 643, 645; see also Trice, 196 F.3d at 1167; Hoxsie v. Kerby, 108 F.3d 1239, 1243 (10th Cir. 1997). Federal law clearly provides that in order to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. Donnelly, 416 U.S. at 645.

This Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding.  Donnelly, 416 U.S. at 643.  The complained of remarks or arguments must be considered in the context in which they were made.  Greer v. Miller, 483 U.S. 756, 765-66 (1987); see also Darden v. Wainwright, 477 U.S. 168, 179 (1986).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1210 (10th Cir. 1989)).  In addition, the Court must consider the prejudice, if any, attributable to the prosecutor's comments.  Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing Mahorney, 917 F.2d at 472-73).

Petitioner contends that the prosecutor's comment when combined with ineffective assistance of defense counsel violated his right to the presumption of innocence.  "Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence . . . , a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right."  Torres v. Mullin, 317 F.3d 1145, 1158 (10th Cir. 2003) (citing Paxton v. Ward, 199 F.3d 1197, 1217-18 (10th Cir. 1999) and Mahorney, 917 F.2d at 473); see also Donnelly, 416 U.S. at 643.

The OCCA found that while the comment was improper, the presumption of innocence was not violated.  The state appellate court noted that no statement was made that the

presumption of innocence did not apply. Further, the jury received specific written instructions on the presumption of innocence and the burden of proof. <u>Williams</u>, 22 P.3d at 711. The OCCA also found it significant that the jury was specifically instructed that what the attorneys said in closing argument was purely argument and not evidence to be considered in reaching their verdict. <u>Id.</u> The OCCA remarked that Petitioner's counsel did challenge the burden of proof. <u>Id.</u> Upon review of the record, this Court finds that the presumption of innocence was not so prejudiced by the prosecutor's comment that it effectively amounted to a denial of the presumption. <u>See</u> <u>Torres</u>, 317 F.3d at 1158. The OCCA's determination that the presumption of innocence was not violated was not an unreasonable application of Supreme Court precedent.

The OCCA also found that considering the comment and the admonishment in context of the trial, including the performance of Petitioner's counsel in the first stage, the comment was not outcome determinative and the trial court's admonition was sufficient to cure any error. <u>Id.</u> This Court agrees. Evidence supporting Petitioner's guilt was overwhelming. The prosecutor's statements could not have plausibly "tipped the scales in favor of the prosecution." <u>See</u> <u>Fero</u>, 39 F.3d at 1474. The curative instructions given by the trial judge likely mitigated any effect the improper statement might have had on the jury. It is highly unlikely the prosecutor's statement would have had any effect on the jury's ability to judge the evidence fairly. <u>See</u> <u>id.</u> After examination of the entire record, this Court concludes that the prosecutor's improper comment did not sufficiently infect the trial so as to make it fundamentally unfair, <u>see</u> <u>Donnelly</u>, 416 U.S. at 643, 645, and thus, the OCCA's determination that the prosecutor's improper comment did not prejudice the outcome of the trial is not an unreasonable application of Supreme Court precedent. Petitioner is denied relief on this ground.

## IX.     Victim Impact Statements

Petitioner contends that the victim impact statement of Brenda Monroe, Ms. Hand's mother, was admitted in violation of due process and his Eighth Amendment rights.   He maintains that Ms. Monroe's victim impact testimony impermissibly characterized the crime, characterized Petitioner, and consisted of highly prejudicial statements causing the trial to become unfair.   Respondent argues that the OCCA's decision that Ms. Monroe's testimony was properly admitted was not an unreasonable application of established Supreme Court precedent.

The established Supreme Court precedent involving victim impact statements is set forth in Payne v. Tennessee, 501 U.S. 808 (1991). Hain v. Gibson, 287 F.3d 1224, 1238 (10th Cir. 2002).   The Supreme Court in Payne held that "the only constitutional limitation on such evidence is if it 'is so unduly prejudicial that it renders the trial fundamentally unfair.'" Id. (quoting Payne, 501 U.S. at 825). In such an event, the Court indicated, "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Id.  (quoting Payne, 501 U.S. at 825). The prohibition against the victim's family giving their "characterizations and opinions about the crime, the defendant, and the appropriate sentence" remains in place. Id. (quoting Booth v. Maryland, 482 U.S. 496, 502 (1987), overruled in part by Payne, 501 U.S. at 825). The Supreme Court in Payne specifically outlined why victim impact evidence was relevant to a capital jury's sentencing decision:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. The State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.

Id. at 1238, n. 10 (quoting Payne, 501 U.S. at 825) (internal quotation marks omitted).

In Petitioner's direct appeal, the OCCA cited and applied the rule of law set out in Payne. The OCCA held that, with the exception of the evidence regarding the victim's activities during high school, all of Ms. Monroe's victim impact testimony was properly admitted. Williams, 22 P.3d at 718-20. With respect to the emotional and purportedly prejudicial nature of Ms. Monroe's statements, the OCCA found as follows:

> Many of the comments challenged by [Williams] as being too emotional also illustrated the psychological impact on Ms. Monroe of losing her daughter. As the trial court noted, it can be difficult to distinguish between what is emotional and what is psychological, and even what is physical. Ms. Monroe's statements concerning her hysterical reaction when informed of her daughter's death and the ensuing psychotherapy, physical illnesses, and depression were properly admitted as relevant to showing how the victim's death emotionally, psychologically, and physically affected her mother. Contrary to [Williams]'s argument, Ms. Monroe's fears of losing her daughter's pictures, of being attacked, and of losing her husband and parents were not so tenuous to the homicide as to lack probative value.

> . . . .

> While a portion of the victim impact testimony was very emotional, taken as a whole, the testimony was within the bounds of admissible evidence, and its emotional content did not have such a prejudicial effect or so skew the presentation as to divert the jury from its duty to reach a reasoned moral decision, based on reliable evidence, whether to impose the death penalty.

Williams, 22 P.3d at 718 -19.

After a careful review of the record, this Court finds that the OCCA's determination on this issue was not an unreasonable application of Supreme Court precedent. As described above, the OCCA reasonably determined that the testimony of Ms. Monroe was not unduly prejudicial and that the testimony which Petitioner challenges due to its emotional nature was properly admitted to show the psychological and physical effect of the crime on Ms. Monroe. Ms.

Monroe's victim impact statement did not impermissibly characterize the crime or Petitioner or state an opinion about the appropriate sentence. The victim's impact statement of Ms. Monroe was not "so unduly prejudicial that it render[ed] the trial fundamentally unfair." <u>Payne</u>, 501 U.S. at 825.

The OCCA's decision that Ms. Monroe's testimony was properly admitted was not an unreasonable application of <u>Payne</u>. Habeas relief on this claim is denied.

## X. Constitutionality of "Continuing Threat" Aggravating Circumstance

Petitioner asserts that the continuing threat aggravator is unconstitutionally vague and overbroad. The OCCA denied relief on this claim in Petitioner's direct appeal. The OCCA noted that it has previously upheld the constitutionality of the continuing threat aggravator "finding it neither vague nor overbroad" and declined to reconsider its previous decisions. <u>Williams</u>, 22 P.3d at 722-23 (<u>citing</u> <u>Short v. State</u>, 980 P.2d 1081, 1103 (Okla. Crim. App. 1999); <u>Hamilton v. State</u>, 937 P.2d 1001, 1012 (Okla. Crim. App. 1997); <u>Pennington v. State</u>, 913 P.2d 1356, 1373 (Okla. Crim. App. 1995); <u>Walker v. State</u>, 887 P.2d 301, 320 (Okla. Crim. App. 1994)).

Similarly, Tenth Circuit precedent forecloses Petitioner's facial challenge to Oklahoma's continuing threat aggravator as unconstitutional. <u>Sallahdin v. Gibson</u>, 275 F.3d 1211, 1232 (10th Cir. 2002); <u>see also</u> <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000) (noting that the Tenth Circuit has repeatedly upheld the facial constitutionality of the continuing threat aggravator as narrowed by the State of Oklahoma); <u>Nguyen v. Reynolds</u>, 131 F.3d 1349, 1352-353 (10th Cir. 1997). Petitioner does not make any argument which compels or permits this Court to disregard the binding precedent. Accordingly, habeas relief must be denied on this issue.

Petitioner also states in the title to this ground ten claim that the continuing threat to society aggravating circumstance was unconstitutional as applied at his trial. He provides no argument to support this claim in the body of his brief. The Court will summarily deny his claim on the merits as Petitioner presents no argument to allow the Court to analyze the claim.

## XI.   Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel was ineffective for failing to challenge the uniform jury instruction concerning the sentencing options for first degree murder, OUJI-CR (2d) 4-68. Petitioner asserts trial counsel objected to the instruction given to the jury on grounds the instruction failed to provide an adequate definition of the meaning of life without the possibility of parole. Petitioner argues that his appellate counsel's failure to raise this issue on direct appeal denied him the effective assistance of counsel under prevailing professional norms. Petitioner raised this claim in his first petition for post-conviction relief and the OCCA denied the claim on its merits. Respondent contends that the OCCA's ruling on this issue is not an unreasonable application of Strickland, 466 U.S. 668.

In evaluating Petitioner's claim of ineffective assistance of appellate counsel as raised in the instant action, this Court shall apply the Strickland two-pronged standard used for claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). As noted earlier, the Strickland test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance. Strickland, 466 U.S. at 687. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue

is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93). If the issue has merit, the Court must then determine whether appellate counsel's failure to raise the claim on direct appeal was deficient and prejudicial.  Hawkins, 185 F.3d at 1152 (citing Cook, 45 F.3d at 394).

Petitioner, in his reply brief (Dkt #48, p. 15), argues that the deferential standard of review under the AEDPA does not apply to ineffective assistance of appellate counsel claims where the OCCA utilized the three-step approach from Walker v. State, 933 P.2d 327 (Okla. Crim. App. 1997) as it did here, rather than the two-prong Strickland test. Petitioner cites Cargle v. Mullin, 317 F.3d 1196 (10th Cir. 2003) in support.  Petitioner misstates the inquiry espoused by the Tenth Circuit Court of Appeals in Cargle.  The Tenth Circuit in Cargle explained its rationale for declining to apply AEDPA deference to Cargle's ineffective assistance of appellate counsel claim as follows:

> Walker's step-two truncation of the Strickland test thus enables the OCCA to reject appellate ineffectiveness allegations without any assessment of the merits of underlying predicate claims, so that the OCCA has been able to declare that a "failure to raise even a meritorious claim does not, in itself, constitute deficient performance."
>
> . . . .
>
> It is clearly wrong, as a matter of federal law, to require as a necessary condition for relief under Strickland, something beyond the obvious merit of the omitted claim. The very focus of a Strickland inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law. A sufficiently meritorious omitted claim certainly can, by itself (or in relation to other issues that counsel did pursue), establish constitutionally deficient performance by appellate counsel. Because the OCCA's analysis of petitioner's appellate ineffectiveness allegations deviated from the controlling federal standard, see Cargle, 947 P.2d at 588-89

(repeatedly invoking principle contrasted with <u>Strickland</u> here), it is not entitled to deference. Of course, in this and in every case raising an ineffective appellate counsel issue, whether the OCCA decision should be accorded AEDPA deference will depend upon a case-specific determination of whether the OCCA followed established <u>Strickland</u> standards, including the principle that ineffective appellate assistance can be established on the basis of the demonstrable merit of the issue omitted by counsel on the petitioner's direct appeal.

<u>Id.</u> at 1204-05 (footnote omitted) (citations omitted). As dictated by the Tenth Circuit in <u>Cargle</u>, the Court must engage in case-specific determination of whether the OCCA followed established <u>Strickland</u> standards. The OCCA in this case did not employ the methods of analysis which the Tenth Circuit in <u>Cargle</u> found to be in conflict with <u>Strickland</u>. The OCCA did not reject the ineffective assistance of appellate counsel claim without inquiring into the merits of the omitted claim, nor did it find that ineffective assistance could not be established in this case despite a sufficiently meritorious omitted claim. In the instant case, the OCCA followed established <u>Strickland</u> standards, despite its application of the three-step <u>Walker</u> approach. The OCCA analyzed the merits of the omitted claim as required by <u>Strickland</u> and reached the following conclusion: "[A]ppellate counsel's failure to raise [the] claim of error . . . did not render his performance unreasonable under prevailing professional norms as such a claim would have been rejected in light of case law from this Court, the Tenth Circuit Court of Appeals and the United States Supreme Court." <u>Williams (PC)</u>, 31 P.3d at 1050. Thus, this Court reviews Petitioner's claim under the AEDPA.

OUJI-CR (2d) 4-68, the challenged instruction, provides:

The defendant in this case has been found guilty by you, the jury, of the offense of murder in the first degree. It is now your duty to determine the penalty to be imposed for this offense.

Under the law of the State of Oklahoma, every person found guilty of murder in the first degree shall be punished by death, or imprisonment for life

without the possibility of parole, or imprisonment for life with the possibility of parole.

Petitioner argues that this instruction fails under <u>Shafer v. South Carolina</u>, 532 U.S. 36 (2001) and <u>Simmons v. South Carolina</u>, 512 U.S. 154 (1994) because it does not provide an adequate definition of the meaning of life without the possibility of parole. The OCCA held that appellate counsel was not deficient for failing to raise the issue because it has repeatedly upheld OUJI-CR (2d) 4-68 as "the uniform instruction setting forth the punishment of life without parole is sufficiently clear to enable any rational juror to understand it without explaining it further" and "instructions additional to the uniform instruction are not necessary." <u>Williams (PC)</u>, 31 P.3d at 1049.

Moreover, the OCCA found that "appellate counsel was not deficient for failing to raise the issue in light of recent jurisprudence from the United States Supreme Court and the Tenth Circuit Court of Appeals." <u>See</u> <u>id.</u> The OCCA explained that <u>Simmons</u> and <u>Shafer</u> are inapplicable to this case and that this conclusion is supported by Tenth Circuit precedent:

> Petitioner asserts that in <u>Shafer v. South Carolina</u>, 532 U.S. 36 . . . (2001) the Supreme Court reaffirmed the principle of <u>Simmons v. South Carolina</u>, 512 U.S. 154 . . . (1994), that due process entitles a defendant to inform the jury of his parole eligibility where the defendant's future dangerousness is at issue and the only sentencing alternative to death available to the jury is life without the possibility of parole.
>
> In <u>Simmons</u>, the jury was given two sentencing options-life imprisonment and death. Under South Carolina state law, the defendant's prior convictions rendered him ineligible for parole. The trial court refused the defendant's requested instructions defining a life sentence and setting forth his parole ineligibility. On appeal, the Supreme Court found in the absence of an instruction setting forth the defendant's parole ineligibility, the jury could have reasonably believed the defendant would be released on parole if he were not executed. The Court explained to the extent that misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing the defendant to death and sentencing him to a limited period of incarceration. The

Supreme Court found the failure to provide the jury with accurate information regarding the defendant's parole ineligibility, combined with the state's argument the defendant would pose a future danger if not executed denied the defendant due process.

In Shafer, the jury was instructed that "life imprisonment means until death of the offender", but the trial court, over defense objection, did not instruct "that a life sentence, if recommended by the jury, would be without parole." Shafer, 121 S.Ct. at 1269 (internal citations omitted). Thereafter, the jury sent a note inquiring "'1) Is there any remote chance for someone convicted of murder to become elig[i]ble for parole?'" and "'2) Under what conditions would someone convicted of murder be elig[i]ble?'" Id. at 1269. The trial court responded with "'Parole eligibility or ineligibility is not for your consideration.'" Id. The Supreme Court extended Simmons to situations where the jury's choice is between life without parole and death, even if a third alternative sentence encompassing release is available to the court should the jury not unanimously agree on a statutory aggravator. The Court held "whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that the life sentence carries no possibility of parole." Id. The Court recognized that the jury was confused by the absence of such instruction as evidenced by its further question about parole eligibility, and firmly rejected the trial court's response that parole eligibility was not for the jury's consideration. The Court stated the "reality [of a life sentence without parole] was not conveyed to Shafer's jury by the court's instructions." Id. at 1274.

This Court has consistently rejected the applicability of Simmons to our statutory capital sentencing procedures "since Oklahoma capital juries are aware that a defendant may be sentenced to life, life without the possibility of parole, or death." Fitzgerald v. State, 972 P.2d 1157, 1171 (Okl.Cr.1998). See also Gilbert v. State, 955 P.2d 727, 731 (Okl.Cr.1998); Hain v. State, 919 P.2d 1130, 1145 (Okl.Cr.) . . .; Trice v. State, 912 P.2d 349, 351-352 (Okl.Cr.1996); Mayes v. State, 887 P.2d 1288, 1317-1318 (Okl.Cr.1994) . . . .

Shafer modifies this holding only to the extent that instructions by the trial court, additional to the uniform instruction, could conflict with the uniform instruction and confuse the jury as to the meaning of the available sentencing options. In Johnson v. Gibson, 254 F.3d 1155 (10th Cir. 2001) the trial court instructed the jury on the three statutory sentencing options, including life imprisonment without the possibility of parole. The jury sent the following note to the trial judge during deliberations: "We need to know! Is life without parole firm-Does it mean he can never be paroled?" Id. at 1164. The trial court responded, over defense objection: "It is inappropriate for you to consider the question asked." Id.

The Tenth Circuit recognized it had previously held that instructing the jury on the three statutorily proscribed punishment options, without any further explanation, satisfies <u>Simmons</u>. <u>Id.</u> at 1165. The Court further noted that a trial court, in response to a jury's inquiry as to the meaning of a life sentence without parole, may simply refer the jury back to the instructions as given. <u>Id.</u> However, "instead of simply referring the jury back to the court's original instructions, 'the trial court told the jury it was not appropriate for it to consider whether the defendant could never be paroled'" and in so doing "plainly contradicted" the original instructions. <u>Id.</u> Applying <u>Shafer</u>, the Tenth Circuit found that as a result, "the jury had a conflict between the court's instructions as to whether it was proper to consider parole eligibility in imposing sentence" and "[a]t worst, the jury may very well have thought that parole was available, even with the life without parole option, but for some unknown reason it could not consider that fact." <u>Id.</u>

In the present case, no instructions additional to the uniform instructions on the statutorily prescribed punishment options were given. Therefore, the jury was not presented with a "false choice" as to its sentencing options. <u>See</u> <u>Johnson v. Gibson</u>, 254 F.3d at 1167, (Henry, J., concurring). The record in this case reflects no questions were asked by the jury as to the meaning of any of the punishment options. Therefore, appellate counsel's failure to raise a claim of error as to the trial court's failure to give instructions additional to the uniform instructions on the three statutorily proscribed punishment options did not render his performance unreasonable under prevailing professional norms as such a claim would have been rejected in light of case law from this Court, the Tenth Circuit Court of Appeals and the United States Supreme Court. Appellate counsel's failure to raise the claim at issue here did not render his performance unreasonable under prevailing professional norms. Accordingly, post-conviction relief on the grounds of ineffective assistance of appellate counsel is denied.

<u>Williams (PC)</u>, 31 P.3d at 1049-50.

The OCCA's determination that appellate counsel's failure to raise the claim at issue on direct appeal did not amount to ineffective assistance of appellate counsel is not an unreasonable application of Supreme Court precedent. Petitioner's claim that it was error for the trial court not to provide the jury additional instruction on the definition of life without parole is without merit. Had appellate counsel raised the issue on direct appeal, the OCCA would have denied the claim of relief pursuant to precedent from the OCCA, from the Supreme Court (<u>Simmons</u>,

<u>Shafer</u>) and from the Tenth Circuit Court of Appeals (<u>Johnson</u>). <u>See</u> <u>id.</u> Because the omitted claim is meritless, appellate counsel's failure to raise it does not amount to constitutionally ineffective assistance. <u>See</u> <u>Hawkins</u>, 185 F.3d at 1152. Petitioner is not entitled to habeas relief on this issue.

## XII.    Jury Instruction on "Continuing Threat" Aggravating Circumstance

Petitioner asserts that the jury instruction on the "continuing threat" aggravator was so ambiguous that there was a reasonable likelihood the jury would interpret it incorrectly. Petitioner relies upon <u>Boyde v. California</u>, 494 U.S. 370 (1990). Petitioner argues the instruction is ambiguous and subject to an erroneous interpretation as to whether the State was required to prove the probability that Petitioner would commit future acts of violence that constitute a continuing threat to society.

At trial, the state relied on the aggravating circumstance that "at the present time there exists a probability that the defendant will commit criminal acts of violence that would constitute a continuing threat to society." (O.R. 271). <u>See</u> Okla. Stat. tit. 21, § 701.12(7). The trial court instructed per OUJI-CR (2d) No. 4-74 as follows:

> The State has alleged that there exists a probability that the defendant will commit future acts of violence that constitute a continuing threat to society. This aggravating circumstance is not established unless the State proved beyond a reasonable doubt:
>
> <u>First</u>, that the defendant's behavior has demonstrated a threat to society; and
>
> <u>Second</u>, a probability that this threat will continue to exist in the future.

(Supplemental Instruction No. 15, O.R. 273). Petitioner argues that while under Oklahoma law, aggravating circumstances do not have elements, from the jury's perspective, they did, because the jury became acclimated to the structure in the first stage jury instructions where the state had

to prove the enumerated elements of a crime beyond a reasonable doubt. Petitioner contends that because the "First" and "Second" components of the challenged instruction fail to mention any requirement of violence, the jury was likely to interpret the instruction in a manner that would not require it to find a "probability that the defendant will commit future acts of violence" in order to find he "constitute[d] a continuing threat to society."

In reviewing an allegedly ambiguous instruction, the Court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Boyde, 494 U.S. at 380) (internal quotation marks omitted). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

The OCCA in rejecting Petitioner's claim of error applied the "reasonable likelihood" standard and found that the instruction was not ambiguous or subject to erroneous interpretation. The state court found that the instruction was "a correct statement of the law which properly channels the discretion of the jury." Williams, 22 P.3d at 722 (citing Welch v. State, 2 P.3d 356, 374 (Okla. Crim. App. 2000); Brown v. State, 989 P.2d 913, 932 (Okla. Crim. App. 1998); Hawkins v. State, 891 P.2d 586, 596 (Okla. Crim. App. 1994)). The OCCA likewise recognized that in Bland v. State, 4 P.3d 702 (Okla. Crim. App. 2000), it had rejected a challenge that the uniform instruction was deficient for failing to properly set forth the requirement that the jury had to find the defendant would commit "future acts of violence." The state court quoted its findings in Bland as follows:

> The first paragraph of the instruction explicitly refers to the allegation that there exists a probability that the defendant will commit future acts of violence. That

> the subsequently listed two criteria which must be proven do not mention violence does not negate the burden on the State to prove a probability that the defendant will commit future acts of violence that constitute a continuing threat to society as listed in the first paragraph. Reading the instruction in its entirety, it is clear the State had the burden of proving the defendant had a history of criminal conduct that would likely continue in the future and that such conduct would constitute a continuing threat to society. Accordingly, we reject Appellant's challenge to Instruction No. 4-74, OUJI-CR (2d). This assignment of error is therefore denied.

Williams, 22 P.3d at 722 (quoting Bland, 4 P.3d at 725). The state court rejected the argument that the instruction was comparable to an instruction setting out incorrect elements of a criminal offense and noted that aggravating circumstances do not contain elements under Oklahoma law. Id. (citing Phillips, 989 P.2d at 1041). Finally, the OCCA recognized that when viewing the instructions as a whole there was no reasonable likelihood that the jurors interpreted the trial court's instructions to mean that the state did not have the burden of proving the continuing threat had to be of a violent nature beyond a reasonable doubt. Id. (referring to Instructions 7, 11, 12 and 13). The state court ultimately held that considering the trial as a whole, there is not a reasonable likelihood that the jurors in this case misinterpreted the instruction. Id.

The OCCA's decision is a reasonable application of Boyde and Estelle because the first sentence of the challenged instruction explicitly informed that jury of the requisite violent nature of the "continuing threat to society." The jury was instructed that "the probability that the defendant will commit future acts of violence" is what constitute[s] the "continuing threat to society." (O.R. 273). Thus, in reading the disputed instruction in its entirety, there is not a reasonable likelihood that the jury interpreted the instruction to mean that Petitioner could pose a threat to society without finding a probability that he would commit future acts of violence.

The state appellate court's ruling is further supported by reviewing the second stage jury instructions and proceedings as a whole.  See Estelle, 502 U.S. at 72 ("the instruction . . . must be considered in the context of the instructions as a whole and the trial record").  The jury was repeatedly instructed that the State had the burden of proving the aggravating circumstances beyond a reasonable doubt.  (See O.R. 265, 269-71, 275).  Furthermore, the "continuing threat" instruction must be read in light of Supplemental Instruction No. 13 which stated that the jury must "determine whether any one of or more of the following aggravating circumstances existed beyond a reasonable doubt: . . . . 5.  At the present time there exists a probability that the defendant will commit criminal acts of violence that would constitute a continuing threat to society."  Instruction No. 13, as well as Instruction No. 11, reiterated the requirement of "criminal acts of violence."  Further, the evidence admitted in support of the aggravating circumstances and the prosecution's argument emphasized violent acts. (See Tr. VIII 1452).

Furthermore, the fact that the instruction might be read to permit the jury to consider Petitioner's nonviolent conduct when determining whether Petitioner poses a future risk of society does not amount to a constitutional violation. Under Oklahoma law, while a nonviolent crime standing alone cannot be the basis for finding the continuing threat aggravator, Wilson v. Sirmons, 536 F.3d 1064, 1110 (10th Cir. 2008) (citing Torres v. State, 962 P.2d 3, 23 (Okla. Crim. App. 1998)), a jury is free to consider "the defendant's nonviolent offenses in conjunction with other factors when determining whether the defendant poses a future risk to society." Id. (quoting Boltz v. Mullin, 415 F.3d 1215, 1231 (10th Cir. 2005)). In this case, the jury considered extensive evidence relating to Petitioner's past violent conduct, there is no reasonable likelihood

that the jury would have determined that the defendant poses a future risk to society based solely upon Petitioner's nonviolent conduct.

The OCCA's determination that the jury instruction on the continuing threat aggravating circumstance was not unconstitutionally ambiguous is not an unreasonable application of Boyde and Estelle. Having failed to demonstrate that the OCCA's finding was an unreasonable application of Supreme Court law, Petitioner is not entitled to relief on this issue.

## XIII. Systemic Risk of Error

Petitioner argues his death sentence must be vacated because the overwhelming systemic risk of error in the Oklahoma trial and appellate process renders the death penalty a cruel and unusual punishment administered without due process and equal protection of the law. Respondent incorrectly contends that Petitioner failed to raise this claim on direct appeal or in state post-conviction proceedings. Petitioner did explicitly raise the issue in his post-conviction proceedings. (See Original Application for Post Conviction Relief in a Death Penalty Case, Post Conviction No. PCD-2000-1650, pp. 23-30).

The OCCA in the post-conviction proceeding rejected this claim finding it had been waived because it was not, but could have been, raised on direct appeal. Williams (PC), 31 P.3d at 1051. The OCCA "[a]pplying the three-part test for ineffective assistance of appellate counsel" likewise found that Petitioner's counsel's failure to raise the issue was not ineffective assistance of counsel. Id. Because the OCCA found the claim was waived, Respondent alternatively contends that procedural bar applies.

Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground. Coleman v. Thompson, 501 U.S. 722, 750 (1991); see

also Romero v. Tansy, 46 F.3d 1024, 1028 (10th Cir. 1995); Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994). A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985). If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)).

To overcome a procedural default, a habeas petitioner must demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner contends that the ineffectiveness of his appellate counsel for failing to raise this claim in the direct appeal establishes the requisite "cause and prejudice" to overcome any procedural bar. Ineffective assistance of appellate counsel may constitute cause for state procedural default where counsel's performance falls below the minimum standard established

in <u>Strickland</u>. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986). When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, the Court looks to the merits of the omitted issue. <u>Hooks v. Ward</u>, 184 F.3d 1206, 1221 (10th Cir. 1999) (<u>citing</u> <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995)). "If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." <u>Id.</u> (quotation omitted). Furthermore, the ineffective assistance of appellate counsel claim asserted as "cause" must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. <u>Murray</u>, 477 U.S. at 489. Petitioner did raise ineffective assistance of appellate counsel in his post-conviction proceedings. (<u>See</u> Original Application for Post Conviction Relief in a Death Penalty Case, Post Conviction No. PCD-2000-1650, pp. 23-30).

In this case, the OCCA's determination that Petitioner has waived, or procedurally defaulted on, this claim is both "independent" and "adequate." The OCCA's procedural bar, based on Petitioner's failure to raise the omitted claims on direct appeal, is an "independent" state ground because state law provided "the exclusive basis for the state court's holding." <u>Maes</u>, 46 F.3d at 985. The basis for the finding of procedural default is Oklahoma statute, Okla. Stat. tit. 22, § 1089. It is "independent" as it is separate and distinct from federal law. <u>See</u> <u>Ake</u>, 470 U.S. at 75. The procedural bar based on § 1089 has been applied in a consistent and evenhanded fashion. <u>See, e.g.</u>, <u>Medlock v. Ward</u>, 200 F.3d 1314, 1322-23 (10th Cir. 2000); <u>Sherrill v. Hargett</u>, 184 F.3d 1172, 1175 (10th Cir. 1999); <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1097 (10th Cir. 1998). Thus, the OCCA's finding is "adequate." <u>See</u> <u>Maes</u>, 46 F.3d at 986.

Furthermore, Petitioner has not established the requisite "cause" and "prejudice" to overcome procedural bar because Petitioner's appellate counsel was not ineffective for failing to raise Petitioner's claim regarding the alleged systemic risk of error. The Court finds that Petitioner's claim that the systemic risk of error in Oklahoma renders the death penalty cruel and unusual punishment is without merit. In his brief, Petitioner cites no specific processes or procedures in Oklahoma which allegedly create an unacceptable risk of error with respect to the death penalty. Nor does Petitioner point to any Oklahoma or federal caselaw recognizing a risk of error in the Oklahoma trial and appellate processes with respect to the death penalty. Rather, Petitioner cites only general caselaw pertaining to the Eighth Amendment and a May 2001 Gallup Poll regarding the death penalty. The Supreme Court has continued to recognize that "the death penalty is not invariably unconstitutional," see, e.g., Kennedy v. Louisiana, 128 S.Ct. 2641, 2650 (2008) (citing Gregg v. Georgia, 428 U.S. 153 (1976)), and Petitioner refers to no attributes of Oklahoma's trial and appellate process that render it unconstitutional here. Petitioner has not established a reasonable probability that had he raised the issue on direct appeal, he would have prevailed. See Smith v. Robbins, 528 U.S. 259, 286 (2000) (citing Strickland, 466 U.S. at 694). Because the omitted issue is without merit, appellate counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel. See Hooks, 184 F.3d at 1221. Because Petitioner's appellate counsel was not ineffective for failing to raise the systemic risk of error claim, Petitioner has not shown the requisite "cause" and "prejudice" to overcome his procedural default.

Petitioner's only other means of gaining federal habeas review of his defaulted claim is a claim of actual innocence under the fundamental miscarriage of justice exception. Herrera v.

Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). Petitioner has not asserted the fundamental miscarriage of justice exception as a means of overcoming procedural default. As a result, Petitioner's claim is procedurally barred. Petitioner is denied relief on this ground.

## XIV.  Accumulated Errors

Petitioner contends that the cumulative effect of individual errors that were individually found to be harmless is sufficiently prejudicial to violate his constitutional rights. The OCCA denied this claim of error on direct appeal as follows:

> We have found error occurring in both the first and second stages of this trial. None of these errors required reversal singly. In viewing the cumulative effect of these errors we also find they do not require reversal of this case as none were so egregious or numerous as to have denied Appellant a fair trial.

Williams, 22 P.3d at 732.

This Court has reviewed the constitutional errors found by the OCCA, but has found no additional errors. The errors reviewed were harmless or non-prejudicial. Cumulative error analysis "merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Hamilton v. Mullin, 436 F.3d 1181, 1196 (10th Cir. 2006) (internal quotations omitted). The Court cannot find under the facts of this case that the cumulative effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). The OCCA's denial of Petitioner's claim based on cumulative error was not an unreasonable application of Supreme Court law. Petitioner is not entitled to relief on this claim.

**XV.    Appellate Reweighing of Aggravating and Mitigating Circumstances**

In his Amendment to his Petition for Writ of Habeas Corpus (Dkt. #48), Petitioner, relying upon <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), asserts that the OCCA violated his Sixth and Eighth Amendment rights by reweighing the aggravating and mitigating circumstances after finding one of the aggravating circumstances invalid. Petitioner claims that the reweighing was a factual determination on which the legislature conditions an increase in maximum punishment which must be made by a jury according to the Supreme Court in <u>Ring</u>. Petitioner asserted this claim in his second application for post-conviction relief which was rejected by the OCCA on January 10, 2003 in Case No. PCD-2002-1067.

As noted above, Petitioner characterizes his claim as based upon <u>Ring v. Arizona</u>. However, in <u>Schriro v. Summerlin</u>, 542 U.S. 348, 358 (2004), the Supreme Court held that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." <u>Ring</u> was issued on June 24, 2002, after Petitioner's conviction and sentence had become final on direct review. <u>See</u> <u>Beard v. Banks</u>, 542 U.S. 406, 411 (2004) (a conviction is final "for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied") (<u>quoting</u> <u>Caspari v. Bohlen</u>, 510 U.S. 383, 390 (1994)).  Thus, Petitioner may not now challenge his sentence based upon a retroactive application of <u>Ring</u>.  Petitioner is denied habeas corpus relief on this ground.

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.      The petition for writ of habeas corpus, as amended (Dkt. ##25, 48) is **denied**.

**DATED** this 7th day of March, 2011.

James H. Payne
United States District Judge
Northern District of Oklahoma